**SAGE STREET ASSOCIATES, 3525 Sage Street Associates, and Marvin B. Myers, Appellants,**

v.

**NORTHDALE CONSTRUCTION COMPANY, Federal Insurance Company, and Federal Deposit Insurance Company, as receiver of NBC Bank–Houston, N.A., successor-in-interest to NBC Bank–Heights, Appellees.**

No. B14–90–0311–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 25, 1991.

Rehearing Overruled June 13, 1991.

David T. Harvin, Betty R. Owens, Gregory N. Jones, Houston, for appellants.

William Coats, Yocel Alonso, W. James Kronzer, Leslie C. Taylor, Geoffrey H. Bracken, David M. Gunn, Houston, for appellees.

Before PAUL PRESSLER, JUNELL and ELLIS, JJ.

## OPINION

PAUL PRESSLER, Justice.

Appellant (Sage) and appellee (Northdale) brought separate actions against each other under a construction contract. The two actions were consolidated. A jury found that Sage had wrongfully terminated Northdale, that Northdale did not breach its agreement with Sage, and that Federal Insurance Company, Northdale's bonding agent, did not fail to perform its obligations under the performance bond. The court awarded Northdale $2,491,110 plus six percent prejudgment interest. The judgment is modified to reflect a ten percent prejudgment interest rate and the remainder of the judgment is affirmed.

Sage, as owner, and Northdale Construction, as contractor, entered into a contract to build a multi-floor apartment building. The agreement provided, in part, as follows:

4. *PRICE AND PAYMENT* Notwithstanding anything to the contrary contained in this document, or in any other document signed by the parties, either before or after the date of this document, except for changes in the Work requested by the Owner or Supervising Architect, which are approved by Mortgagee and HUD and except as provided in any amendment pursuant to Paragraph 12, Owner shall pay Contractor for the Work an amount equal to the smaller of THIRTEEN MILLION FIVE HUNDRED THIRTY–FIVE THOUSAND AND NO/100 DOLLARS ($13,535,000.00) as adjusted pursuant to Exhibit C, or the amount of Work cost certified to HUD and approved by HUD with regard to the Project.

Anything to the contrary contained herein or in the cost plus construction contract FHA Form 2442A notwithsatnding, it is specifically agreed that the Contractor and its affiliates shall be entitled to and shall receive from the Owner the following profit and overhead, totaling SEVEN HUNDRED AND SIXTY THOUSAND DOLLARS ($760,000.00), without regard to costs whether actual or certified, approved, or disapproved, as follows:

(i) the Contractor shall receive an overhead allowance of TWO HUNDRED AND SIXTY ONE THOUSAND ONE HUNDRED AND FIFTY NINE DOLLARS ($261,159.00), to be drawn over the construction period, pro rata; and

(ii) an aggregate of FOUR HUNDRED AND NINETY EIGHT THOUSAND EIGHT HUNDRED AND FORTY ONE DOLLARS ($498,841.00) shall be included in the categories of profit and overhead in subcontracts with affiliates of the Contractor for concrete and carpentry work.

To obtain a guarantee from the United States Department of Housing and Urban Development, Sage and Northdale executed a contract entitled, "Construction Contract—Cost Plus." That contract provided, in pertinent part,

A. (1) Subject to the provisions hereinafter set out, the Owner shall pay to the

Contractor for the performance of this Contract the following items in cash:

(a) The actual cost of construction as defined in Article 10 below; plus

(b) A fee of $ NONE

In no event, however, shall the total cash payable pursuant to this paragraph (1) exceed Thirteen Million Five Hundred and Thirty–Five Thousand Dollars ($13,-535,000.00)

(2) In addition to any cash fee provided for in paragraph (1) Owner shall pay to the Contractor by means other than cash, the following: NONE

After completing a portion of the construction, Northdale left the project and sued, claiming Sage breached the contract by failing to make installment payments and payment for change orders. Federal Insurance refused to pay on the bond, claiming that Sage breached the contract, and thus it was not liable. Sage alleged that Northdale breached the contract by abandoning the project and by performing substandard work.

In nine points of error, Sage claims the evidence is legally and factually insufficient to support the jury's findings. Sage's points of error can be broken down into two issues: (1) which party breached the contract? and (2) what are the damages resulting from the breach?

■ A contractor is excused from performance where the owner refuses to permit him to proceed, fails to provide the required means to complete the contract, or fails to make payments provided by the contract, including installment payments. *Fischer v. Richard Gill Co.*, 253 S.W.2d 915, 917–18 (Tex.Civ.App.—San Antonio 1952, writ ref'd).

■ Neither party contends that the contracts were ambiguous. Thus it was the duty of the court to construe the contracts as a matter of law. *R & P Enterprises v. LaGuarta, Gavrel & Kirk*, 596 S.W.2d 517, 518 (Tex.1980). In *LaGuarta*, the supreme court stated:

In the interpretation of contracts the primary concern of courts is to ascertain and to give effect to the intentions of the

parties as expressed in the instrument. To achieve this object the Court will examine and consider the entire instrument so that none of the provisions will be rendered meaningless. If a written instrument is so worded that a court may properly give it a certain or definite legal meaning or interpretation, it is not ambiguous.

The construction agreement provided for installment payments as follows:

Owner shall be liable for unpaid amounts due Contractor, including installment payments as they become due, so long as Contractor is in compliance with the terms hereof and the terms of any other obligations incurred hereunder.

Northdale billed Sage for change orders according to the terms of the contract, but Sage failed to pay the change orders. Sage also did not pay for the utilities as required by the contract. Therefore, Northdale was within its rights in stopping work, and Sage was wrong when it terminated Northdale.

■ Sage argues that Northdale is not entitled to the amount of damages awarded. Where the owner wrongfully interferes with the contractor and prevents completion of the contract, the contractor is entitled to recover an amount which would place him in a position equivalent to that which he would have occupied if there had been no breach and the contract had been performed fully. *Dankowski v. Cremona*, 352 S.W.2d 334, 336 (Tex.Civ.App.—Eastland 1961, writ ref'd n.r.e.). The contractor may also recover any damages that he may have sustained by reason of the owner's breach of the contract, including the profits that he would have made had he been permitted to perform. *Id.*

■ Sage argues that the measure of damages for wrongful termination is the difference between the unpaid contract price and the cost to complete the work. The question submitted to the jury, however, read:

What sum of money, if any, do you find from a preponderance of the evidence is due to Northdale from Sage Street pur-

suant to the contract for the work it performed, its overhead, and its profit, if any.

Because Sage failed to object to that measure of damages, it is bound by it. *See Tribble & Stephens Co. v. Consolidated Services, Inc.*, 744 S.W.2d 945, 949 (Tex. App.—San Antonio 1987, writ denied).

To put Northdale in the position it would have occupied had it been allowed to complete the contract, it should receive the contract price minus the money it had received, plus any amounts owed for utilities and spent on change orders. Marvin Myers, Sage's representative, testified that the change orders increased the contract price to $13,863,900. Sage had paid Northdale $11,103,204. This difference is $2,760,696. The utility bills were $53,401. Testimony would thus support damages of $2,814,097. Because the jury found the damages to be less than that amount, there is evidence to support the jury's finding. *See Tribble & Stephens Co. v. Consolidated Services, Inc.*, 744 S.W.2d at 949.

The third issue Sage raises is Federal Insurance's liability on its performance bond. The performance bond was to indemnify Sage from all cost and expense that Sage might incur as a result of Northdale's default. Federal Insurance conditioned its obligation under the bond as the following:

> The Surety shall not be liable under this Bond to the Obligees, or either of them, unless the said Obligees, or either of them, shall make payments to the Principal strictly in accordance with the terms of said Contract as to payments, and shall perform all the other obligations to be performed under said Contract at the time and in the manner therein set forth.

A deviation from the payment provisions by Sage would thus excuse Federal Insurance. Since the jury found that Sage did not perform properly, the trial court correctly relieved Federal Insurance from performance on the bond.

In a cross-point of error, Northdale claims that the trial court erred in awarding prejudgment interest at the rate of six percent. When no rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts where the exact sum payable can be determined by the contract itself. TEX.REV.CIV. STAT.ANN. art. 5069–1.03 (Vernon 1987). Article 5069–1.03, however, does not apply to interest when the fixed sum is not so ascertainable. *Perry Roofing Co. v. Olcott*, 744 S.W.2d 929, 930 (Tex.1988); *Winograd v. Willis*, 789 S.W.2d 307, 312 (Tex. App.—Houston [14th Dist.] 1990, n.w.h.)

Besides providing for a fixed price for the completion of the contract, the contract also provided that the owner would pay for change orders and utilities which are not assigned value in the contract. The damages thus cannot be calculated from the face of the contract. Prejudgment interest then accrues at the prevailing rate on the date judgment is rendered but in no event less than ten percent. *Perry Roofing Co. v. Olcott*, 744 S.W.2d at 930. The judgment is reformed to reflect prejudgment interest of ten percent per annum. The remainder of the trial court's judgment is affirmed.