**Daniel S. PARKS and Suzanne Parks, Appellants,**

v.

**DeWITT COUNTY ELECTRIC COOPERATIVE, INC., Appellee.**

**No. 13–96–033–CV.**

Court of Appeals of Texas, Corpus Christi.

Feb. 19, 1998.

Rehearing Overruled April 2, 1998.

W. McNab Miller, III, Houston, Daniel S. Parks, The Woodlands, for Appellants.

Pamela J. Touchstone, Edward P. Quillin, Joseph M. Gregory, Schell, Beene & Vaughan, Dallas, for Appellee.

Before SEERDEN, C.J., and CHAVEZ and RODRIGUEZ, JJ.

## OPINION ON MOTION FOR REHEARING

RODRIGUEZ, Justice.

We overrule both parties' motions for rehearing, withdraw our opinion dated December 11, 1997, and substitute the following opinion in its place.

This is an appeal from a directed verdict. Appellants, Daniel S. Parks and Suzanne Parks, sued DeWitt County Electric Cooperative, Inc. ("the Co-op") for damages resulting from destruction of three trees on their property in DeWitt County. We reverse and remand.

On September 2, 1988, appellants and the Co-op entered into a contract whereby appellants granted the Co-op an electric utility easement across their property. Approximately eighteen months later, on April 10, 1990, the Co-op entered appellants' property and cut down three large oak trees that were growing within the easement "right-of-way." Claiming damages resulting from the loss of the trees, appellants brought suit alleging breach of contract, violations of the Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA"),[1] and negligence. After two weeks of testimony, the case was submitted to the jury on all three causes of action. Because of prior commitments, the trial judge, Judge Marion Lewis, was unable to continue in the case and was replaced by Judge Whayland Kilgore. The jury returned deadlocked on special issue number one— whether the Co-op breached the easement contract by cutting down appellants' trees. The jury had not yet considered the DTPA or negligence issues. Judge Kilgore then took the case from the jury and granted the Co-op's motion for directed verdict.

In points of error one, five, eight, and nine, appellants complain the trial court erred in granting appellee's motion for directed verdict because the court failed to comply with contract law in interpreting the easement.

---

1. TEX. BUS. & COMM.CODE ANN. §§ 17.41–.63 (Ver- non 1987 & Supp.1998).

A directed verdict is proper when: (1) a defect in an opponent's pleading makes it insufficient to support a judgment; (2) certain fact propositions are true which, under the substantive law, entitle a party to judgment as a matter of law; or (3) the evidence is insufficient to raise a fact issue that must be established for the opponent to be entitled to judgment. *City of San Benito v. Cantu*, 831 S.W.2d 416, 422 (Tex.App.—Corpus Christi 1992, no writ.).

We review a trial court's directed verdict *de novo*. *Graham v. Atlantic Richfield Co.*, 848 S.W.2d 747, 750 (Tex.App.—Corpus Christi 1993, writ denied). This Court considers the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Henderson v. Travelers Ins. Co.*, 544 S.W.2d 649, 650 (Tex.1976). If there is any evidence of probative force to raise a fact issue on a material question, then the issue must go to the jury and a directed verdict is improper. *Najera v. Great Atl. & Pac. Tea Co.*, 146 Tex. 367, 207 S.W.2d 365, 367 (1948); *Cavazos v. Fidelity & Cas. Co. of N.Y.*, 590 S.W.2d 173, 175 (Tex.App.—Corpus Christi 1979, no writ).

The basic rules of contract interpretation are applicable in construing an easement. *Boland v. Natural Gas Pipeline Co.*, 816 S.W.2d 843, 844 (Tex.App.—Fort Worth 1991, no writ). Where the contract can be given a definite legal meaning or interpretation, it is not ambiguous and the court will construe the contract as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983); *Hallmark v. Port/Cooper-T. Smith Stevedoring Co.*, 907 S.W.2d 586, 590 (Tex.App.—Corpus Christi 1995, no writ). However, a contractual provision is ambiguous if it is reasonably susceptible to more than one interpretation. *Coker*, 650 S.W.2d at 393; *Hallmark*, 907 S.W.2d at 590. "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Hallmark*, 907 S.W.2d at 590 (citing *Coker*, 650 S.W.2d at 394). When a contract contains an ambiguity, the granting of a directed verdict is improper because the interpretation of the instrument becomes a fact issue. *Coker*, 650 S.W.2d at 394; *see also Stinger v. Stewart & Stevenson Servs.*, 830 S.W.2d 715, 721 (Tex.App.—Houston [14th Dist.] 1992, writ denied) (Draughn, J., dissenting).

In construing contracts, the court's primary concern is to ascertain the parties' true intentions as expressed in the instrument. *Coker*, 650 S.W.2d at 393. "To achieve this objective, the court must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* Parties to an instrument are presumed to intend every clause to have some effect or to evidence their agreement and a reasonable interpretation of an agreement is preferred to one that is unreasonable. *See Westwind Exploration, Inc. v. Homestate Sav. Ass'n*, 696 S.W.2d 378, 382 (Tex.1985). The language used by the parties should be accorded its plain grammatical meaning unless it definitely appears that the parties' intentions would be thereby defeated. *Lyons v. Montgomery*, 701 S.W.2d 641, 643 (Tex.1985). The court avoids, when possible and proper, an unreasonable, inequitable, or oppressive construction. *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 530 (Tex.1987).

Appellants, citing *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 737 (Tex.1990), assert that in applying the rules of construction, this Court must interpret any ambiguity in the easement contract strictly against the Co-op and, thereby, find the easement did not authorize the Co-op to cut down appellants' trees. We disagree.

In *Gonzalez*, the majority stated that it is a "well-established law that where an ambiguity exists in a contract, the contract will be construed strictly against the party who drafted it...." *Id.* Taken alone, this statement would appear to support appellants' proposition. However, in his concurring opinion, Justice Gonzalez more accurately explains that this rule is the "well-known rule of construction that inconsistent or ambiguous provisions of an *insurance* policy will be construed against the insur-

er . . . ." *Id.* (Gonzalez, J., concurring) (emphasis added); *see also State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 433 (Tex. 1995) (holding that ambiguity in *insurance* contract is construed strictly against insurer); *accord Dickson v. State Farm Lloyds,* 944 S.W.2d 666, 668 (Tex.App.—Corpus Christi 1997, no writ); *Ohio Cas. Group of Ins. Cos. v. Chavez,* 942 S.W.2d 654, 658 (Tex.App.—Houston [14th Dist.] 1997, writ denied); *Phillips v. Union Bankers Ins. Co.,* 812 S.W.2d 616, 620 (Tex.App.—Dallas [1st Dist.] 1991, no writ); *Vest v. Gulf Ins. Co.,* 809 S.W.2d 531, 533 (Tex.App.—Dallas 1991, writ denied). Under appellants' analysis of *Gonzalez,* an ambiguous contract would never be interpreted by the trier of fact because, as a rule of construction, the judge would always construe an ambiguity strictly against the maker of the instrument. We do not think the supreme court intended such a result by its decision in *Gonzalez.*[2] Therefore, in accordance with the rule in *Coker,* we hold that an ambiguity in a non-insurance contract is a fact issue to be decided by the trier of fact. *Coker,* 650 S.W.2d at 394; *Security State Bank v. Valley Wide Elec. Supply Co.,* 752 S.W.2d 661, 665 (Tex.App.—Corpus Christi 1988, writ denied).[3]

■ In this case, the easement stated, *inter alia,* that:

> The Cooperative shall have the right to clear the right-of-way of all *obstructions,* to *cut* and trim trees within the right-of-way or chemically treat trees or shrubbery with herbicides and to *cut down* from time to time all dead, weak, leaning, or dangerous trees that are tall enough to strike the wires in falling. (Emphasis added).

There is conflicting evidence as to the proper meaning of the highlighted language in this clause. Appellants' expert testified that typically in the electric service industry, an "obstruction" means "to be in the way of, . . .

such as when we are talking about a building in the way of . . . a [power] line." On the other hand, appellee's expert stated it is anything within the thirty-foot right-of-way. Furthermore, while appellants assert "cut" is distinguishable from "cut down," appellee avers "cut" implicitly includes "cut down."

■ Merely because the parties proffer differing interpretations of the contract does not necessarily give rise to an ambiguity. *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 134 (Tex.1994). "For an ambiguity to exist, both interpretations must be reasonable." *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex.1996). Having considered all provisions of the easement and reviewed the entire record, including the testimony regarding the interpretation of "obstruction" and "cut," we find there are at least two reasonable interpretations of the language in the easement. Therefore, the easement is ambiguous and it was error for the trial court to grant appellee's directed verdict. *Collora v. Navarro,* 574 S.W.2d 65, 68 (Tex.1978).

Appellants' first, fifth, eighth, and ninth points of error are sustained.

■ In points of error seven, fourteen, fifteen, and sixteen, appellants assert the trial court erred in granting appellee's directed verdict as to their causes of action under the DTPA and negligence because such claims were not properly disposed of by the directed verdict on the breach of contract claim. These issues were originally submitted to the jury, but had not been decided or even considered when the jury announced it was unable to reach a verdict on the breach of contract claim. Appellee cites *Quitta v. Fossati,* 808 S.W.2d 636, 644 (Tex.App.—Corpus Christi 1991, writ denied) for the proposition that appellants' DTPA and negligence causes of action arise "out of performance of the contract" and therefore were not actionable.

---

**2.** We note we have found no authority holding *Gonzalez* stands for the proposition that an ambiguity in a non-insurance contract must be construed strictly against the maker of the contract.

**3.** Our holding in this case in no way abrogates the rule of construction that, when interpreting a contract, courts must strictly construe it against its maker. *Temple–Eastex Inc. v. Addison Bank,*

672 S.W.2d 793, 798 (Tex.1984); *Republic Nat'l Bank v. Northwest Nat'l Bank,* 578 S.W.2d 109, 115 (Tex.1978); *Solis v. Evins,* 951 S.W.2d 44, 50 (Tex.App.—Corpus Christi 1997, no writ). We note this rule is not controlling here because the interpretation of an ambiguous contract is an issue for the trier of fact. *Coker,* 650 S.W.2d at 394.

Appellee's reliance on *Quitta* is misplaced. In *Quitta*, there was no evidence of a violation of the DTPA aside from the disputed contract, therefore, this Court held the dispute was controlled by traditional contract principles. *Id.* at 645. In this case, however, the Co-op admitted it had an undisclosed policy whereby, based upon its discretion, it would clear the right-of-way. Additionally, there was testimony regarding alleged verbal assurances made by a Co-op representative that the trees on appellants' property would not be cut down. Unlike in *Quitta*, these assurances and nondisclosure of the above mentioned policy induced appellants into the transaction and were actionable under the DTPA.

Furthermore, even if the directed verdict was proper as to the breach of contract claim, this Court in *Quitta* specifically stated that its holding was inapplicable where the DTPA claim was "independently actionable." *Quitta*, 808 S.W.2d at 644 n. 4. The *Quitta* court noted that where an alternative interpretation of the contract is argued and the dispute arises out of performance of the contract, the claim sounds in contract only. *Id.* at 644. However, if a misrepresentation is made regarding a party's rights under the contract, it is actionable under the DTPA. *Id.* (discussing *Leal v. Furniture Barn, Inc.*, 571 S.W.2d 864, 865 (Tex.1978)). As noted above, the evidence suggests appellants were not informed of the Co-op's "clear the right-of-way" policy and they were verbally assured no trees would be cut from their land. Because this is evidence misrepresentations may have been made regarding the Co-op's right under the contract to "cut down" trees on appellants' property, the DTPA claim was independently actionable.

■■■ Finally, where *Quitta* did not address the issue of whether a plaintiff could assert a negligence cause of action in addition to a breach of contract claim, the supreme court has held that a contractual relationship may give rise to both a tort claim as well as a breach of contract claim. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986). The factors to consider are: (1) whether the duty to avoid the alleged tortious conduct arises independent of the contract and (2) whether the only injury is the economic loss to the subject matter of a contract itself. *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex. 1991). Here, there is some evidence the Co-op's conduct—entering upon appellants' property and cutting down three trees—if negligent, would give rise to liability even if no contract existed. Additionally, the record indicates appellants' damages were based upon the value of replacing the destroyed trees and not upon the value of the easement, which was the subject matter of the contract. Based upon the foregoing, it was error for the trial court to grant a directed verdict as to appellants' DTPA and negligence causes of action..

Appellants' seventh, fourteenth, fifteenth, and sixteenth points of error are sustained.

■■■ In their twentieth point of error, appellants assert the trial court erred in denying their motion for a directed verdict as to their DTPA claim. Specifically, appellants contend there was undisputed evidence the Co-op represented that its agreement with appellants conferred rights that the contract did not, in fact, confer.

As stated above, a directed verdict is proper when: (1) a defect in an opponent's pleading makes it insufficient to support a judgment; (2) certain fact propositions are true which, under the substantive law, entitle a party to judgment as a matter of law; or (3) the evidence is insufficient to raise a fact issue that must be established for the opponent to be entitled to judgment. *Cantu*, 831 S.W.2d at 422.

While under points of error seven, fourteen, fifteen, and sixteen we hold that (1) a DTPA action is independently actionable, (2) the Co-op admitted it had an undisclosed policy whereby it would clear the right-of-way, and (3) there was testimony that the Co-op made representations it would not cut down trees on appellants' property; we disagree with appellants' assertion that the above testimony was undisputed and, therefore, no fact question was presented.

The record clearly reflects that Mr. Butler, a Co-op representative, testified that he and Mr. Parks did not, in fact, discuss the issue

of cutting or trimming trees. Specifically, the following discourse occurred during direct-examination between appellants' counsel and Mr. Butler:

Mr. Miller: So do you remember what you talked about with Mr. Parks [when you met with him on October 10, 1988]?

Mr. Butler: Mr. Parks just told me where he wanted the meter pole and that he had to leave and that's all I can remember of it.

Following that testimony, appellee's counsel further questioned Mr. Butler regarding his conversation with Mr. Parks.

Mr. Quillin: All right. Give us, tell us or tell the jury about what happened when you went out there and what they were doing and what y'all did when they left in relation to when you left; go ahead and tell us about the sequence.

Mr. Butler: I went out there to this location, drove down there and met with Mr. Parks and he said I have got and [sic] electrician here, Greg's Electric and I have got an appointment someplace and he didn't have a whole lots [sic] of time. I don't remember what the minutes was [sic], but it wasn't long and I asked him about where to put the meter pole at and also if he wanted to buy the old poles where I had stated to replace the poles because of the woodpecker holes in it and then he left. Me and the electrician finished up the job on what we were going to do and he was going to call in to keep the outage time down when the line was logged out.

Mr. Quillin: He and Mr. Parks left?

Mr. Butler: Yes.

Mr. Quillin: And you remember that?

Mr. Butler: Yes.

Mr. Quillin: All right. Now did, during this brief conversation with Mr. Parks, did he say anything to you about I don't want you cutting my trees or I want to be notified before you cut any of my trees?

Mr. Butler: No.

Mr. Quillin: Did he tell you that before you did any work on my easement I want to be notified ahead of time, any discussion like that whatsoever?

Mr. Butler: No.

We find the above evidence is sufficient to raise a fact issue regarding alleged representations made by the Co-op as to whether trees would be cut from appellants' property. Because a directed verdict is only proper when there is no probative evidence that raises a fact issue on a material question, we find it was not error for the trial court to deny appellants' directed verdict motion.

Appellants' twentieth point of error is overruled.

In points of error twenty-one through twenty-six, appellants ask this court, upon remand, to declare admissible certain evidence excluded at trial. An opinion on the admissibility of such evidence would be advisory. *See Northern Natural Gas Co. v. Conoco, Inc.,* 939 S.W.2d 676, 681 (Tex.App.—El Paso 1996, writ granted); *Harkins v. Crews,* 907 S.W.2d 51, 60 n. 4 (Tex.App.—San Antonio 1995, writ denied). It has long been held that appellate courts have no jurisdiction to render advisory opinions. *Morrow v. Corbin,* 122 Tex. 553, 62 S.W.2d 641, 646–47 (1933); *Corpus Christi Indep. Sch. Dist. v. Padilla,* 709 S.W.2d 700, 708 (Tex.App.—Corpus Christi 1986, no writ) (Dorsey, J., concurring).

Points of error twenty-one through twenty-six are overruled.

Due to our disposition of the above points, we need not address the remaining points of error. Tex.R.App. P. 47.1.

The judgment of the trial court is REVERSED and the cause REMANDED for a new trial.