**ENTERGY GULF STATES, INC. f/k/a Gulf States Utilities Company, Appellant,**

v.

**AKROTEX, INC., Appellee.**

No. 09–99–547–CV.

Court of Appeals of Texas, Beaumont.

Submitted Jan. 11, 2001.

Decided April 12, 2001.

Christine S. Kibbe, Beaumont, for appellant.

Sandee L. Hart, David Dies, Law Offices of David Dies, Orange, for appellee.

Before WALKER, C.J., BURGESS and HILL[1], JJ.

## OPINION

HILL, Justice (Assigned).

Entergy Gulf States, Inc. f/k/a Gulf States Utilities Company, appeals from a judgment resulting from a jury verdict in favor of Akrotex, Inc. In a sole issue, Entergy asserts the trial court erred by submitting Akrotex's claim under negligence, when it has no common-law duty to connect and inspect Akrotex's electric service and meter and where the damages are purely economic.

We reverse the judgment and render that Akrotex take nothing by its suit and that costs of court are charged to Akrotex, because Akrotex has waived any recovery for breach of contract by not submitting such claim to the jury and because the only duty breached by Entergy was a duty arising out of its contract to exercise due care in the connection of electric service, not from any independent duty that would give rise to tort liability.

Akrotex is a collector, reprocessor, and seller of plastic. In 1994, Akrotex added additional electrical service because it was putting in a new plastic extruder. The service consisted of a new circuit breaker and two conduits. When Entergy provided electrical service to the new equipment, the connection was made in such a way that the service was out of phase, resulting in abnormally low usage readings. Akrotex attributed the lower electrical usage to its installation of the new extruder. Based upon that assumption, Akrotex committed to sell an older extruder. Originally, Akrotex would have had its older extruder back on line, but its belief that the energy savings was caused by a new extruder delayed its getting a second extruder line in production for several months. The damages Akrotex sought and recovered are lost profits resulting from the delay in getting the production on line.

Akrotex brought an action for violation of the Deceptive Trade Practices Act, breach of contract, and negligence. It

---

1. The Honorable John Hill, sitting by assignment pursuant to Tex.Gov't Code Ann. § 74.003(b) (Vernon 1998).

waived its cause of action under the D.T.P.A., as well as the breach of contract, and submitted its case to the jury solely on negligence. Akrotex pleaded that Entergy was negligent by: (1) failing to properly train and supervise its employees regarding the proper manner of connecting three-phase electrical service; (2) failing to properly train and supervise and have proper policy in place regarding the need for checking connections within the connection box at time of installation of service to insure that the connection is not cross phased or shorted; (3) failing to properly connect electrical service to Akrotex's building; (4) failing to properly inspect the metering device to accurately determine the electrical consumption within a reasonable time; and (5) failing to find its error in connection and metering until after four months of use.

 Entergy contends in its sole issue that any claim Akrotex might have is a contract claim, not a tort claim, and that Akrotex waived any claim it might have had for breach of contract. The contractual relationship of parties may create duties under both contract and tort law. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986). "The acts of a party may breach duties in tort or contract alone or simultaneously in both. The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of the contract itself, the action sounds in contract alone." *Id. See also Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex.1991). Loss of profits caused by a negligent performance of a contract is an economic loss to the subject of the contract itself and does not constitute a tort. *See id.* We therefore hold that Akrotex's claim for lost profits caused by Entergy's negligent perfor-

mance of its contract to establish electrical service does not constitute a tort.

Akrotex contends that its claim is a tort, relying upon the principle recognized in *DeLanney* that, " 'Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract.' " *Id.* at 494 (quoting *Montgomery Ward v. Scharrenbeck*, 146 Tex. 153, 157, 204 S.W.2d 508, 510 (1947)). However, after recognizing that principle, the court held that, "[I]f the defendant's conduct-such as negligently burning down a house-would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct-such as failing to publish an advertisement-would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract." *Id.*

Akrotex relies in part upon the case of *Thomson v. Espey Huston & Assoc., Inc.*, 899 S.W.2d 415 (Tex.App.—Austin 1995, no writ), a case involving the construction of an apartment complex. *Id.* at 417. In *Thomson*, the court overruled points of error concerning a portion of a summary judgment that denied recovery where the defendant's negligence caused no injury other than economic injury to the subject of the contract itself. *Id.* at 421–22. The court sustained points of error relating to the portion of the summary judgment denying recovery for a claim that negligence in designing the drainage system and in testing soil quality caused damage to other parts of the apartment complex. *Id.* at 422. In doing so, the court noted the defendant had a duty independent of the contract not to negligently damage the

plaintiff's property or that of his neighbors. *Id.*

Previously in its opinion, the *Thomson* court had referred to the portion of *De-Lanney* that summarized and reaffirmed the rationale of *Scharrenbeck,* 204 S.W.2d at 508, a case in which the defendant repaired a home water heater that later malfunctioned, causing a fire that destroyed the house and its contents. *Thomson,* 899 S.W.2d at 421. The Supreme Court said in *DeLanney* that although the defendant in *Scharrenbeck* had a contractual duty to put the water heater back in good working order, the law also implied a duty to the defendant to act with reasonable skill and diligence in making the repairs so as not to injure a person or property by his performance. *DeLanney,* 809 S.W.2d at 494.

The *Thomson* court also referred to an Illinois case, *2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.,* 136 Ill.2d 302, 144 Ill.Dec. 227, 555 N.E.2d 346 (1990). In that case the court answered a certified question to the effect that there was no recovery in tort against an architect for negligence for purely economic loss. *Id.* at 350–51, 144 Ill.Dec. 227, 555 N.E.2d 346. The court defined "economic loss" as " 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property . . . as well as the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.' " *Id.* at 348, 144 Ill. Dec. 227, 555 N.E.2d 346 (quoting *Moorman Mfg. Co. v. Nat'l Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982)). We find the case at bar is distinguishable from both *Thomson* and *Scharrenbeck* because in this case Akrotex's claim is solely for economic loss and does not involve a claim for personal injury or damage to property, whether the subject of the contract or otherwise. We find that *2314 Lincoln Park West,* the Illinois case cited by the court in *Thomson,* supports our conclusion for that reason.

Akrotex appears to suggest that Entergy's duty arose outside the contract because Entergy's tariff referred to the providing of electric service, while its complaints relate to negligence in Entergy's connection of electrical service. We do not understand, however, that Akrotex is maintaining that it did not have an agreement with Entergy that it was going to connect its lines with those of Akrotex as a part of its providing electrical service. Akrotex had such an agreement with Entergy, whether it is specifically mentioned in the tariff or not. We therefore disagree with Akrotex's conclusion that whatever duty Entergy had did not arise from its agreement with Akrotex.

As part of its discussion regarding whether its damages arose from its contract with Entergy, Akrotex relies upon the case of *Parks v. DeWitt County Elec. Coop., Inc.,* 962 S.W.2d 707 (Tex.App.— Corpus Christi 1998), *rev'd in part and remanded in part,* 1 S.W.3d 96 (Tex.1999). In that case, DeWitt County Elec. Coop. had an easement over the plaintiff's property for its electrical lines. *Id.* at 709. The Cooperative entered onto the plaintiff's land and cut trees so as to keep their limbs clear of its lines. *Id.* The plaintiff sued on several theories, including negligence. *Id.* The court held that the trial court should not have granted a directed verdict as to plaintiff's claim of negligence because there was evidence that the Cooperative's conduct in entering the plaintiff's property and cutting the plaintiff's trees, if negligent, would give rise to liability even if no contract existed and because the damages were the replacement value of

the trees rather than the value of the easement, which was the subject matter of the contract. *Id.* at 712. However, this case was subsequently reversed as to this issue by the Texas Supreme Court, which held that the contract between the parties setting forth the parties' rights as to whether trees might be cut governed disputes as to whether trees could be cut or how they were cut. *See DeWitt County Elec. Coop.,* 1 S.W.3d at 105. We do not find this Supreme Court decision to conflict with our own decision.

Akrotex suggests we find a duty existed outside of the contract in this case based upon general principles of duty. However, we cannot do so in light of the Texas Supreme Court authority previously discussed which we believe specifically provides that Akrotex's claim is one of breach of contract, not of negligence. Akrotex places great reliance on the case of *Southwestern Bell Tel. Co. v. McKinney,* 699 S.W.2d 629, 633 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). However, that case is distinguishable because it is a personal injury case not involving a contract between the plaintiff and the defendant. Akrotex suggests Entergy had an internal policy requiring it to check new or modified installations within two or seven days following the hook-up and maintains that this internal policy created a duty arising outside the contract. In support of its contention, Akrotex directs us to the cases of *Williford Energy Co. v. Submergible Cable Serv., Inc.,* 895 S.W.2d 379, 386 (Tex. App.—Amarillo 1994, no writ); *Colonial Sav. Ass'n v. Taylor,* 544 S.W.2d 116, 120 (Tex.1976); *Moorhead v. Mitsubishi Aircraft Int'l, Inc.,* 828 F.2d 278, 282 (5th Cir.1987); *Gill v. United States,* 429 F.2d 1072, 1075 (5th Cir.1970); and *Indian Towing Co., Inc. v. United States,* 350 U.S. 61, 69, 76 S.Ct. 122, 100 L.Ed. 48 (1955).

We find all of these cases are either distinguishable or support our conclusion. In *Williford,* the court stated "that one who voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person or property will not be injured thereby." *Williford,* 895 S.W.2d at 386. In response to Williford's argument that the defendant's internal policies or procedures established a duty, the court found no duty was established by those policies or procedures because they did not constitute affirmative acts and no reliance by the defendant was shown. *Id.* at 386–87. Based upon this case, we conclude Akrotex failed to establish that Entergy's internal policies or procedures established a tort duty on the part of Entergy because such policies or procedures did not constitute affirmative action on the part of Entergy, there is no evidence that Akrotex relied upon those policies or procedures, and because Akrotex has not shown any injury to persons or property.

In *Colonial,* the court found the defendant could possibly have a duty to the plaintiff where the defendant had gratuitously undertaken to provide insurance for property that, after a fire, was determined not to be insured. *Colonial,* 544 S.W.2d at 120. The court reversed the trial court's judgment *non obstante veredicto* because there was evidence to support certain jury findings and because there was a disputed fact issue on whether the plaintiff had relied on the defendant to obtain insurance on the property that had been destroyed in the fire. *Id.* at 121. In its discussion, the court set forth section 323 of the Restatement (Second) of Torts:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm

resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

*Colonial,* 544 S.W.2d at 119–20 (quoting Restatement (Second) of Torts § 323 (1965)).

We find *Colonial* to be distinguishable because in that case there was affirmative action, the offer to provide insurance; there was physical harm to the plaintiff's property; and there was evidence of reliance by the plaintiff upon the defendant's undertaking of the obligation to provide insurance on the destroyed property. On the other hand, in the case at bar, it is Entergy's failure to return and inspect within a reasonable time of which Akrotex complains, rather than some affirmative action; Akrotex sought no damages for any physical harm to persons or property; and there is no evidence that Akrotex relied upon an inspection by Entergy that Entergy did not make, nor is there evidence that Akrotex relied upon Entergy's internal policies and procedures.

Akrotex urges that there was affirmative action on Entergy's part, referring us to the inspection it ultimately made; negligence in its connection of service; and repetitive underbilling. This argument overlooks the fact that the policies and procedures upon which Akrotex relies for a duty refer to the requirement that Entergy make an early inspection and does not relate to the inspection that Entergy ultimately made, nor to any negligence in the connection of service, or any resulting underbilling. We fail to see how internal policies and procedures could lead to the creation of a duty as to affirmative actions that are outside the provisions of those policies and procedures.

Akrotex also urges that it relied upon Entergy's conduct, without being specific as to what conduct it relied upon. Presumably, it did not rely upon Entergy's failure to inspect. We conclude then that its reliance also concerned matters not within the purview of the internal policies and procedures to which it has referred. There is no evidence that it was familiar with Entergy's internal policies and procedures and relied upon them. Additionally, as previously noted, Akrotex makes no argument that it has sought any damage for physical harm to persons or property.

In *Indian Towing Co.,* a suit involving damage to a ship's cargo, the court held that where the United States Coast Guard in its discretion decided to operate a light on an island and engendered reliance on the guidance afforded by that light, it would be liable under the Tort Claims Act for failing to keep the light in good working order. *Indian Towing Co.,* 350 U.S. at 69, 76 S.Ct. 122. This case is also distinguishable from the case at bar because in *Indian Towing* there was affirmative action on the part of the government, its undertaking to maintain a lighthouse, an undertaking upon which the plaintiffs relied, and there was physical damage to the plaintiff's property.

*Gill* and *Moorhead* are both cases involving damages due to the deaths of passengers in airplanes, based upon alleged negligence of air traffic controllers with respect to weather briefings they gave to the pilots of the planes. In *Gill* the court held there could be liability under the Federal Tort Claims Act for negligent provision of services upon which the public has come to rely. *Gill,* 429 F.2d at 1075. The court indicated that the government's duty to provide services with due care to airplane pilots might rest either upon the requirements of procedures manuals spell-

ing out the functions of its air traffic controllers or upon general pilot reliance on the government for a given service. *Id.* The same court reached the same result in *Moorhead,* holding that FAA weather briefers have the duty of due care in giving information about hazardous weather conditions that might influence pilots to alter their proposed flight plans. *Moorhead,* 828 F.2d at 282. In a footnote, the court noted this duty is rooted in both general pilot reliance for the service and in the briefers' manual. *Id.* at 282, n. 13. These cases are also distinguishable from the case at bar for the same reasons as *Indian Towing,* except that these cases involved personal injury resulting in death, rather than just property damage. We also note that, unlike the case at bar, neither *Indian Towing, Gill,* nor *Moorhead* involved cases of recovery sought only for economic damages that arose from the breach of a contract.

█ Akrotex also argues that Entergy's duty arose outside the contract because it repudiated its contract with Akrotex by preventing it from performing the contracts. In support of this argument, the only basis presented by Akrotex to show repudiation of the contract by Entergy appears to be the fact that there is some evidence that Entergy had access to Akrotex's internal wiring through transformer cans, whereas Akrotex did not, even though under the tariff on file Akrotex had responsibility for the electricity supplied, as well as the wires, apparatus and appurtenances used in connection therewith, where they are located at or beyond the point of delivery. As noted by Akrotex, · the tariff constitutes the contract between it and Entergy with respect to the provision of electrical service and does not speak to the connection of electrical service. Entergy and Akrotex did have an agreement that Entergy was to connect its

lines with Akrotex's new service. Entergy did not abrogate that contract, it performed that contract when it made that connection.

In insisting that Entergy did abrogate its contract, thereby causing a duty that arose outside the contract, Akrotex relies upon the cases of *Henderson v. Central Power and Light Co.,* 977 S.W.2d 439, 448 (Tex.App.—Corpus Christi 1998, pet. denied); *Atkinson Gas Co. v. Albrecht,* 878 S.W.2d 236, 239 (Tex.App.-Corpus Christi 1994, writ denied); and *Sage Street Assoc. v. Northdale Constr. Co.,* 809 S.W.2d 775, 777 (Tex.App.—Houston [14th Dist.] 1991), *aff'd in part and rev'd and remanded in part on other grounds,* 863 S.W.2d 438 (Tex.1993). All of these cases are distinguishable.

In *Henderson,* a fire damaged a house owned by the plaintiffs but rented to others. *Henderson,* 977 S.W.2d at 442. The fire was caused by corrosion in wiring which the Hendersons, under the applicable tariff, had the duty to maintain. *Id.* at 447. However, evidence showed that Central Power and Light Co. affirmatively prevented the Hendersons from performing that maintenance. *Id.* at 448. The court relied upon the general rule that performance is excused when a party to a contract prevents the other party from performing and thereby repudiates the contract. *Id.* The court held that to the extent Central Power's own actions prevented its customers from complying with the maintenance provisions of the tariff, it has repudiated the tariff and its customers were excused from such duties. *Id.* The Hendersons were not customers of Central Power because their tenants, not the Hendersons, were the ones who contracted for service with Central Power. *Id.* at 447. In the case at bar, there was an agreement between Entergy and Akrotex that Entergy would connect its service with Akrotex's

new wiring and service. Also, *Henderson* involved property damage, whereas the case at bar does not. We do not find our opinion to be in conflict with the opinion in *Henderson.*

Akrotex does not discuss *Atkinson* or *Sage,* apparently relying on both for the general principle that performance is excused when a party to a contract prevents the other party from performing and thereby repudiates the contract. *Atkinson,* 878 S.W.2d at 239; *Sage,* 809 S.W.2d at 777. In the case at bar, Entergy did not repudiate the contract by preventing Akrotex from performing, because it was Entergy that had the obligation to perform by connecting its lines to provide new service to Akrotex. We sustain the contentions raised by Entergy in its sole issue.

We reverse the judgment and render that Akrotex, Inc., take nothing by its suit and that costs of court are charged to Akrotex.

REVERSED AND RENDERED.

BURGESS, Justice, dissenting.

I respectfully dissent. Quite simply, I believe the jury got it right. The majority holds there is no tort independent of the contract; I disagree. The contract simply obligates Entergy to supply electrical service. Entergy did that and Arkotex did not seek damages for any breach of that contractual duty. Entergy failed to do several things that resulted in Arkotex's damages. Entergy failed to properly connect the meter, resulting in an understatement of the amount actually used; Entergy failed to timely return to Arkotex to inspect the connection and Entergy failed to timely monitor Arkotex's bill, resulting in Arkotex's detrimental reliance on the correctness of the bill. This negligence caused Arkotex damages and they sought compensation. The jury awarded a minimum amount of damages ($50,000), under the record, and then apportioned the responsibility 60/40 resulting in total damages of $30,000.[2] The jury verdict and court's judgment should be affirmed.

In the alternative, we should remand for a retrial on the breach of contract claim since the majority holds there is no negligence independent of the contract. *See Thornhill v. Ronnie's I-45 Truck Stop, Inc.,* 944 S.W.2d 780, 787 (Tex.App.— Beaumont 1997, writ dism'd by agr.); *Edinburg Hosp. Authority v. Trevino,* 941 S.W.2d 76, 79 (Tex.1997).

---

**2.** The record indicates Arkotex paid approximately $5,800 per month (almost $70,000 annually) for electrical service to Entergy. It is wild, but fair, surmise that this dispute might have been amicably settled if Entergy had feared the loss of this business.