

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-17-00404-CV

———————————————

NORMAN DELAMAR, Appellant

V.

FORT WORTH MOUNTAIN BIKER'S ASSOCIATION, Appellee

---

On Appeal from the 348th District Court
Tarrant County, Texas
Trial Court No. 348-283758-16

---

Before Sudderth, C.J.; Gabriel and Pittman, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

### I. Introduction

Appellant Norman DeLamar filed the underlying lawsuit against Appellee Fort Worth Mountain Biker's Association (the Association) to recover for injuries he sustained when he was knocked off of his mountain bike after he struck a downed tree across a mountain bike trail at Gateway Park (Gateway). Norman claimed that the Association was negligent in failing to properly maintain a safe mountain bike trail as purportedly required by its contractual agreement with the City of Fort Worth (City). The trial court granted summary judgment on Norman's claims against the Association. We will affirm.

### II. Background

On July 12, 2014, Norman was riding his mountain bike on a trail in Gateway, a park owned by the City, when he came upon a downed tree resting across the trail at head level. Although known to be a "really good rider," Norman asserts that because he did not have time to stop or avoid the tree, the tree "clotheslined" his head and neck and knocked him off of his bicycle, causing him injuries.

Norman sued the City, asserting claims of general negligence and gross negligence. In a single pleading, the City filed an answer and identified the Association as a responsible third party because of an "Adopt-A-Park Agreement" (Contract) that made the Association "responsible for constructing and maintaining the bike trail in question." Norman then amended his petition and added the

2

Association as a defendant in the suit.[1]  Norman asserted that through the Contract, the Association agreed to "assume responsibility for maintenance, construction and safety of the trails," and as such owed "a duty to protect the general public from dangerous conditions such as falling trees."  Norman claimed that the Association had breached this alleged duty by

- failing to make any effort to ensure that the trees alongside of the bicycle trail were not a danger to cyclists;

- failing to implement any sort of safety procedure with respect to the danger of falling trees in high bicycle (and pedestrian) traffic areas;

- failing to maintain the trails to prevent dangerous conditions from occurring despite knowing the dangers associated with cycling;

- failing to provide cyclists with adequate safeguards, or any safeguards at all, to prevent dangerous conditions from occurring; and

- consciously disregarding the heath of the trees and the danger that they pose.

The Contract provides that the Association "shall perform all work and services hereunder as an independent contractor . . . .  [and] shall have exclusive control of, and the exclusive right to control the details of the work performed hereunder[.]"  The Contract specifically provides that the Association "shall, at its sole cost and expense, construct and maintain the Trails in accordance with [the] Agreement," and it defines "trail maintenance" as including, but not limited to,

---

[1]Norman's suit against the Association for negligence and gross negligence was eventually severed from his suit against the City.

"repairing, replacing, and rebuilding trails or sections of trails that are eroding or in disrepair; pruning of trees; [and] removal of brush[.]" However, the Contract prohibits the Association from "trimming and pruning, *until written approval is obtained* from the Director [of the Parks and Community Services Department]," and from "remov[ing] any tree *without prior written permission* from the City Forester." [Emphasis added.] Finally, the Contract expressly reserves the City's right to control and access all portions of Gateway: "The City does not relinquish the right to control the management of the Parks, or the right to enforce all necessary and proper rules for the management and operation of the same. The City . . . has the right at any time to enter any portion of the Parks[.]"

The Association answered and then filed a no-evidence and traditional motion for summary judgment. In its motion, the Association asserted that there was no evidence that

- the Association was negligent as it owed Norman no duty with respect to the condition of the premises; or

- the Association owed a duty to keep the premises in reasonably safe condition, inspect the premise to discover any defects, or to make safe any defect or give an adequate warning of any dangers.

Although the Association clearly challenged the existence of any legal duty it owed to Norman, the Association's motion primarily argued that Norman's claim sounded in premises liability rather than general negligence and that he could not artfully plead a general negligence claim when his injuries were caused by a premises defect. Norman

4

filed a response and attached, *inter alia*, a short affidavit and an expert report from an arborist, Matthew Clemons. In his response, Norman appeared to adopt the Association's characterization of his claim as one for premises liability and in doing so focused on his status, arguing that he was an invitee. Indeed, Norman's "Conclusion" sought denial of the summary judgment motions because there was "more than enough credible evidence to find that the [Association] is liable *under a premises liability theory* for this incident[.]" [Emphasis added.] The Association filed a reply and objected to the expert report from Clemons as inadmissible hearsay.

Following the hearing on the Association's no evidence and traditional motions for summary judgment, the trial court requested letter briefs and took the matter under advisement. In his letter brief, Norman altered his prior position and for the first time asserted that the Association's summary judgment theory was flawed because his suit against the Association was based on a general negligence theory, not a premises liability theory. The trial court signed an order sustaining the Association's objections to Clemons's expert report and a separate order granting the Association's no evidence and traditional motions for summary judgment.

On appeal, Norman contends the trial court erred by construing his claim as one for premises liability rather than general negligence and abused its discretion by sustaining the Association's hearsay objection to Clemons's report.

## III. Norman's Negligence Claim

### A. Standard of Review

The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). A defendant who conclusively negates at least one essential element of the nonmovant's cause of action is entitled to summary judgment as to that cause of action. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion and present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979). The only question is whether an issue of material fact is presented. *See* Tex. R. Civ. P. 166a(c).

After an adequate time for discovery, a party without the burden of proof at trial may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense. *See* Tex. R. Civ. P. 166a(i). Once a no evidence motion has been filed in accordance with Rule 166a(i), the burden shifts to the nonmovant to bring forth evidence that raises a fact issue on the challenged evidence. *See Macias v. Fiesta Mart, Inc.*, 988 S.W.2d 316, 317 (Tex. App.—Houston [1st Dist.] 1999, no pet.). We review a no evidence motion for summary judgment under the same legal sufficiency standards as a directed verdict. *King Ranch, Inc. v.*

6

*Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). A no evidence motion is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See id.* at 751. If the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *Id.* A mere scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact, and the legal effect is that there is no evidence. *See id.*

When reviewing traditional and no evidence summary judgments, we perform a de novo review of the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *See Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006); *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). We are not required to ascertain the credibility of affiants or to determine the weight of evidence in the affidavits, depositions, exhibits and other summary judgment proof. *See Gulbenkian v. Penn*, 252 S.W.2d 929, 932 (Tex. 1952); *Palestine Herald–Press Co. v. Zimmer*, 257 S.W.3d 504, 508 (Tex. App.—Tyler 2008, pet. denied).

All grounds in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *See* Tex. R. Civ. P. 166a(c). "When a trial court's order granting summary judgment does not specify the ground or grounds

relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious." *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993).

When a party moves for both a traditional and a no evidence summary judgment, we generally first review the trial court's summary judgment under the no evidence standard of Rule 166a(i). *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the no evidence summary judgment was properly granted, we need not reach arguments under the traditional motion for summary judgment. *See id.*

## B. General Negligence vs. Premises Liability Theories of Recovery

Although premises liability is a form of negligence, "[n]egligence and premises liability claims . . . are separate and distinct theories of recovery, requiring plaintiffs to prove different, albeit similar, elements to secure judgment in their favor." *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 471 (Tex. 2017); *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 529 (Tex. 1997) (stating that "[b]ecause premises defect cases and negligent activity cases are based on independent theories of recovery, a simple negligence [jury] question . . . cannot support a recovery in a premises defect case"); *E.I. DuPont de Nemours & Co. v. Roye*, 447 S.W.3d 48, 57–58 (Tex. App.—Houston [14th Dist.] 2014, pet. dism'd) ("Because [claimant] was limited to a premises liability theory of recovery, . . . the trial court erred when it submitted an ordinary negligence cause of action against [appellant] to the jury. . . . Accordingly, the jury's finding that [appellant] was negligent is immaterial and cannot support a judgment against

8

[appellant].").  As our sister court has explained, premises liability is a "special form of negligence in which the duty owed to the plaintiff depends upon the plaintiff's status on the premises at the time of the incident."  *Wyckoff v. George C. Fuller Contracting Co.*, 357 S.W.3d 157, 163–64 (Tex. App.—Dallas 2011, no pet.) (citing *Scott & White Mem'l Hosp. v. Fair*, 310 S.W.3d 411, 412 (Tex. 2010)).[2]

While, theoretically, a litigant may maintain causes of action for both general negligence and premises liability, to be viable, the general negligence theory of recovery must be based not upon an injury resulting from the condition of the property, but upon the defendant's contemporaneous activity.  *See Mangham v. YMCA of Austin, Texas-Hays Comtys.*, 408 S.W.3d 923, 929 (Tex. App.—Austin 2013, no pet.); *see also W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005) (analyzing claimant's negligence and premises liability claims together).  If the injury is one caused by a premises defect, rather than a defendant's contemporaneous activity, a plaintiff cannot circumvent the true nature of the premises defect claim by pleading it as one for general negligence.  *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 389 (Tex. 2016).

---

[2]To prevail on a premises-liability claim, a plaintiff must prove (1) actual or constructive knowledge of some condition on the premises by the owner; (2) that the condition posed an unreasonable risk of harm; (3) that the owner did not exercise reasonable care to reduce or eliminate the risk; and (4) that the owner's failure to use such care proximately caused the plaintiff's injuries, *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998), whereas under the common law doctrine of negligence, a plaintiff must prove (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Helbing v. Hunt*, 402 S.W.3d 699, 702 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

Because the lines between negligent activity and premises liability are "sometimes unclear," *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010), determining whether a claim is one for a premises defect or general negligence "can be tricky." *Austin v. Kroger Tex. L.P.*, 746 F.3d 191, 196 (5th Cir. 2014), *certified question answered*, 465 S.W.3d 193 (Tex. 2015).  The policy undergirding this distinction is that negligence encompasses a malfeasance theory based on affirmative, contemporaneous conduct that caused the injury, whereas premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe.  *See Del Lago Partners*, 307 S.W.3d at 776; *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 753 (Tex. 1998) (explaining negligent activity concerns "simply doing or failing to do what a person of ordinary prudence in the same or similar circumstances would have not done or done" while premises liability concerns the "failure to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition which the owner or occupier [of land] knows about or in the exercise of ordinary care should know about" and quoting *Keetch v. Kroger Co.*, 845 S.W.2d 262, 266–67 (Tex. 1992)).

## C. Discussion

In his first issue, Norman argues that the trial court erred by granting summary judgment on a premises liability theory when his claims sounded in general negligence: "The Association characterized [my] lawsuit against it as one for premises liability. This argument is flawed because the Association was not the possessor of the

premises when [I] was injured[.]"   Norman argues that his "petition is fairly constructed as advancing an ordinary negligence claim" because he pleaded that the Association is liable for "failing to employ any procedure to ensure safety from falling trees, and for failing to maintain a safe bike path and the trees along it."   The Association responds that regardless of how Norman pleaded his claim, he is limited to a premises liability theory of recovery because Norman was injured by an unsafe or dangerous condition on the premises—not by contemporaneous negligent activity.[3]

**1. Summary Judgment was Not Granted on an Unaddressed Claim Because the Association's Motion for Summary Judgment Challenged the Existence of a Legal Duty**

As a preliminary matter, we consider Norman's contention that the trial court improperly granted summary judgment on his negligence claim when the Association's motion for summary judgment actually addressed only an unpleaded premises-liability claim. *See Chessher v. Sw. Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983) (stating it is reversible error to grant summary judgment on a claim not addressed in the motion).   Three of our sister courts have addressed similar instances in which defendants filed summary judgment motions on the theory that the plaintiff

---

[3]The Association asserts it is a "non-possessory interest holder" which is "the legal equivalent of the occupier" of the bike trail portion of Gateway.  Put differently, the Association contends it has rights akin to that of an easement holder.  *See Brookshire Katy Drainage Dist. v. Lily Gardens, LLC*, 333 S.W.3d 301, 309 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) ("[A]n easement is a nonpossessory interest in another's property that authorizes its holder to use that property for a particular purpose.").

11

had impermissibly pleaded a premises defect claim as a general negligence claim. *See Griffin v. Shell Oil Co.*, 401 S.W.3d 150 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *Somoza v. Rough Hollow Yacht Club, Ltd.*, No. 03-09-00308-CV, 2010 WL 2867372, at *4 (Tex. App.—Austin July 20, 2010, no pet.) (mem. op.); *Kalinchuk v. JP Sanchez Construction Co.*, No. 04-15-00537-CV, 2016 WL 4376628, at *3 (Tex. App.—San Antonio Aug. 17, 2016, no pet.) (mem. op.).

In *Griffin*, the First District Court of Appeals considered whether "the trial court erred in granting summary judgment in favor of Shell and CH2M on his negligent-activity claims because neither Shell nor CH2M sought summary judgment on these claims." 401 S.W.3d at 157. After stating that a trial court errs by granting more relief requested by disposing of issues not presented to it in the summary judgment motion, the First court analyzed each defendant's summary-judgment motion and held that based "upon the plain language," the defendants sought summary judgment "only on [appellant's] premises-defect claim" and not his negligent activity claim. *Id.* at 158–59. Thus, the First court reversed summary judgment on appellant's negligence claim and remanded the case. *Id.* The First court did note, however, that "[a] legal duty must be established in order for [appellant] to ultimately recover on his negligent-activity claim[,]" *id.* at 163 n.4, thus signaling its concern over the viability of appellant's negligence claim.

In *Somoza*, the plaintiff had been injured while operating a jet ski when he allegedly ran into a partially submerged steel cable tethered to a floating dock, near the

12

marina owned and operated by a yacht club. *Somoza*, 2010 WL 2867372, at *1. He filed suit against the yacht club and alleged negligence and premises liability claims. *Id.* The yacht club filed a hybrid no evidence and traditional motion for summary judgment, asserting, in part, that the plaintiff "has no claim for general negligence . . . because his negligence claim sounds solely in premises liability," and that the plaintiff has "produced no evidence of the essential elements of duty, breach, or proximate cause." *Id.* The trial court granted the motion.

On appeal, the Third District Court of Appeals considered the plaintiff's contention that the trial court improperly granted summary judgment on his general negligence claim. *Id.* at *4. The Third court "assum[ed] without deciding that [the plaintiff] could bring a claim for general negligence despite his failure to allege injury resulting from any contemporaneous activity by the Yacht Club" and nevertheless concluded that "he has still failed to establish the existence of a duty to support a claim in negligence." *Id.* at *5.

In *Kalinchuk*, the plaintiff filed a lawsuit against his putative employer for negligence and gross negligence after he was injured at a baseball field renovation site by a section of bleachers that fell on him. 2016 WL 4376628, at *1. The employer moved for traditional and no evidence summary judgment, and alleged, *inter alia*, that the plaintiff did not have more than a scintilla of evidence to establish the existence of a legal duty. *Id.* In its motion, the employer relied on cases involving premises liability claims and asserted that the plaintiff purported to state a claim for negligence

13

when his claim was "actually based on the theory of premises liability because he [sought] to recover for an injury allegedly created by a condition on the premises rather than for an injury created as a result of an activity." *Id.* at *3. The plaintiff responded that the employer owed him a common law duty to exercise reasonable care and avoid a foreseeable risk of harm. *Id.* The trial court granted summary judgment. *Id.*

On appeal, the Fourth District Court of Appeals reasoned that "[w]hether [plaintiff's] claim is a claim for negligence as he argues or a premises liability claim as [employer] contends, the question of whether a duty exists remains the same in that it requires a balancing of interrelated factors that make up the risk-utility balancing test." *Id.* After applying the risk-utility balancing test to the facts of the case, the Fourth court concluded that the plaintiff had "failed to produce a scintilla of evidence creating a fact issue to support the existence of [a] legal duty owed to him by [the employer.]" *Id.* at *3–4.

We do not quarrel with the First court's strict approach in refusing to read into the summary judgment motion a ground that was not clearly articulated. However, we view the approach by the Third and Fourth courts as allowing for a more expedient disposition while maintaining fidelity to Rule 166a(c)'s requirement that summary judgment motions "state the specific grounds therefor." Tex. R. Civ. P. 166a(c); *Somoza*, 2010 WL 2867372, at *5; *Kalinchuk*, 2016 WL 4376628, at *3–4.

14

The existence of a legal duty is a threshold issue generally decided as a matter of law. *Fort Bend Cty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 395 (Tex. 1991). And even assuming under these facts that Norman could bring a claim for general negligence, the Association in its motion for summary judgment challenged the existence of a legal duty owed to him regarding the downed tree and maintenance of trail safety regardless of whether the duty arose under a premises liability theory based on Norman's status at the time of the injury or a general negligence theory balancing test.[4] *See Kalinchuk*, 2016 WL 4376628, at *3–4 (explaining whether the plaintiff's claim is a claim for negligence as he argued or a premises liability claim as the defendant contended, "the question of whether a duty exists remains the same in that it requires a balancing of interrelated factors that make up the risk-utility balancing test"); *cf. Del Lago Partners*, 307 S.W.3d at 767 (applying risk-utility balancing factors to determine duty in premises liability case); *Wyckoff*, 357 S.W.3d at 164 ("General

[4]Although we do not reach the issue, we believe that Norman's claim sounds in premises liability in any event. *See United Scaffolding*, 537 S.W.3d at 472 ("We have recognized that slip/trip-and-fall cases have consistently been treated as premises defect causes of action. In such cases, the plaintiff alleges injury as a result of a physical condition or defect left on the premises, not as a contemporaneous result of someone's negligence." (internal citation and quotation marks omitted)); *Sampson*, 500 S.W.3d at 389–90 (citing *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113 (Tex. 2010) (per curiam), a case with injuries caused by a bicycle crash after the cyclist ran over a metal chain stretched across a college campus driveway as illustrating a "quintessential premises defect claim"); *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 230 (Tex. 2004) (concluding that the "allegation of an injury caused by a tree limb falling on [plaintiff] constitutes an allegation of a condition or use of real property and is an allegation of a premises defect").

negligence principles apply to a contractor who has left [a] premises in an unsafe condition."). Therefore, because the summary judgment motion fairly challenged the existence of a legal duty, we reject Norman's contention that the trial court erred by granting the motion on an unchallenged ground, and we now analyze whether the Association owed Norman a legal duty under a general negligence theory.

## 2. No Legal Duty Under a General Negligence Theory

The question of legal duty is a "multifaceted issue" requiring courts to balance a number of factors such as the risk and foreseeability of injury, the social utility of the actor's conduct, the consequences of imposing the burden on the actor, and any other relevant competing individual and social interests implicated by the facts of the case. *Tex. Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 33 (Tex. 2002). "Although the formulation and emphasis varies with the facts of each case, three categories of factors have emerged: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy considerations." *Id.* at 34. Of these factors, the Supreme Court of Texas has identified "foreseeability as the 'foremost and dominant consideration' in the duty analysis." *Id.* at 36 (quoting *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987)). "Foreseeability means that a person who possesses ordinary intelligence should have anticipated the danger that his negligent act would create for others." *Midwest Emp'rs Cas. Co. ex rel. English v. Harpole*, 293 S.W.3d 770, 779 (Tex. App.—San Antonio 2009, no pet.). However, foreseeability alone is not sufficient to impose a duty. *Id.*

16

Here, Norman pleaded that the Association contractually assumed "responsibility for maintenance, construction and safety of the trails," and as such, owed a duty to "protect the general public from dangerous conditions[.]" The record, which contains the Contract and deposition excerpts, evidences the Association's agreement to, and exercise of, some limited control over the construction and maintenance of Gateway's bike trails by having monthly meetings to discuss maintenance issues and by building trails in the months between May and October. The summary judgment evidence also provided that the Association holds an annual work day in June to make sure the trails are in "tiptop shape" for their annual "fat tire festival." This workday consists of going through the entire trail to look for places that needed to be trimmed or pruned.

Lawrence "Larry" Colvin, the Association's president at the time of Norman's crash, testified that during the monthly meetings, the Association's members discussed safety of the trees in general as well as identified certain problem trees to City employees who "were the only ones that [could] operate the chainsaws." Larry also testified that the Association had once asked the City to close the trail because of "so many trees down," but that the City refused. Larry testified that the Association worked with Melinda Adams, an "urban forester" with the City, who "[took] a look at the trees." Although Larry acknowledged that the Association had no "tree safety plan" and had never consulted an arborist, he concluded that even retaining a certified

17

arborist to walk Gateway once a week would still not prevent falling trees in a park "hundreds of thousands of trees."

Larry's testimony concerning the existence of "hundreds of thousands of trees" along the mountain bike trail provided proof that the danger of a falling tree was plausible. And in his deposition, Larry acknowledged that the likelihood of falling trees would increase in "an unprecedented drought like we were in in 2014"—the year of Norman's injury.

However, Norman testified in his deposition that he had ridden the same trail "no more [than] two days" earlier and that he had not seen the downed tree, so it was possible that the tree had fallen only a day or two before his crash. Indeed, Norman conceded that it was possible that the tree could have actually fallen only a few hours before his crash. Moreover, the Contract expressly prohibits the Association from pruning trees without the Director's prior written approval and expressly prohibits the Association from removing any tree without prior written permission from the Forester. Norman does not direct us to any part of the Contract showing that the Association had agreed to assume a legal duty to maintain the safety of the trails for the general public.

Based on our de novo review of the record, we hold that Norman failed to establish that the Association owed him a legal duty to protect him from the downed tree across the trail that the Association did not cause to fall, that may have fallen only hours—but no later than a day or two—before Norman struck it, and that the

18

Association was not even authorized to unilaterally remove.[5] *See Felts v. Bluebonnet Elec. Coop., Inc.*, 972 S.W.2d 166, 169 (Tex. App.—Austin 1998, no pet.) (rejecting complainant's argument that an electrical co-op's tree-trimming agreement creating a limited right to trim or clear trees for the purpose of protecting its power lines "created a broader *duty* to maintain the area for the protection of the general public traveling on the nearby county road"); *Jacobs-Cathey Co. v. Cockrum*, 947 S.W.2d 288, 292 (Tex. App.—Waco 1997, writ denied) (holding that "a defendant's *policy* to remedy dangerous conditions he may come across does not impose a legal *duty* on him to these third parties" and that a defendant bears "no common law duty to remove debris . . . that was left by some other party"); *see also J.P. Morgan Chase Bank, N.A. v. Tex. Contract Carpet, Inc.*, 302 S.W.3d 515, 530–32 (Tex. App.—Austin 2009, no pet.) (holding a contractual agreement did not create a legal duty to a third party when the contractual benefit to the third party was not clearly intended by the contract and was merely incidental to the agreement).

Therefore, the trial court did not err by granting summary judgment on Norman's negligence and gross negligence claims. *See Gonzalez v. VATR Constr., LLC*, 418 S.W.3d 777, 789 (Tex. App.—Dallas 2013, no pet.) (holding that because

---

[5]Norman also does not persuade us that we should create a legal duty regarding the downed tree and trail safety based on public policy considerations. *See Kalinchuk*, 2016 WL 4376628, at *4. Indeed, public policy considerations weigh heavily against imposing such a legal duty on what is essentially a group of volunteer mountain bike enthusiasts who have been granted such limited oversight over the safety of the bike trails, if any.

19

summary judgment was proper on negligence claim, it was also proper on gross negligence claim). We overrule Norman's first issue.

## IV. Norman's Excluded Summary Judgment Evidence

Norman's second issue challenges the trial court's decision to sustain the Association's hearsay objection and strike Matthew Clemons's report. Norman's contention is that because he submitted an affidavit from Clemons in which Clemons swore that the attached report was a true and correct copy of the report that he had personally prepared, the report was authenticated, "which overcomes the hearsay problem." The Association responds that Norman misunderstands its objection, which was that the report was inadmissible hearsay, not that it was not properly authenticated.

### A. Standard of Review

A trial court's rulings on the admissibility of evidence are reviewable under an abuse of discretion standard. *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015). An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis in the record for the ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A trial court's discretion in determining whether an expert is qualified to testify on a matter is broad but not unbounded. *In re Commitment of Bohannan*, 388 S.W.3d 296, 307 (Tex. 2012). A trial court abuses its discretion by excluding expert testimony if the testimony is relevant to the issues in

the case and is based on a reliable foundation. *Id.*; *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009) (op. on reh'g).

## B. Analysis

Norman attached a short affidavit from Matthew Clemons which stated, in relevant part, as follows:

> I certify that the 'Initial Assessment of Tree Conditions; Gateway Park Mountain Bike Trail' was prepared on March 21, 2017 for Jackson Davis regarding Norman DeLamar's bicycle incident, which is attached as an Exhibit to Plaintiff's Response to Fort Worth Biker's Association Traditional and No Evidence Motions for Summary Judgment, is a true and correct copy of the report which I personally prepared and provided Mr. Davis.

The March 21, 2017 letter was attached to Norman's summary judgment response as Exhibit D.

The Association asserts that Clemons's affidavit (which was not objected to), may authenticate the attached report, but it does not remove the report from the ambit of hearsay. We agree. *See* Tex. R. Evid. 801, 802; *cf. Petty v. Children's World Learning Ctrs., Inc.*, No. 05-94-00998-CV, 1995 WL 379522, at *5 (Tex. App.—Dallas May 31, 1995, writ denied) (explaining that "[a]uthenticity is separate and apart from qualification as an exception under the hearsay rule"). Further, the report does not obviously fall within any of the exclusions from hearsay (Tex. R. Evid. 801(e)) or exceptions to the rule against hearsay (Tex. R. Evid. 803)—indeed, Norman does not assert any exclusion or exception.

21

Accordingly, we hold that the court did not abuse its discretion by sustaining the Association's hearsay objection to Clemons's report, and we overrule Norman's second issue.

## V. Conclusion

Having held that the trial court did not err by granting summary judgment on Norman's negligence and gross negligence claims and that the trial court did not abuse its discretion by excluding Norman's expert's report as inadmissible hearsay, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Delivered: January 24, 2019