**Opinion issued April 8, 2025.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-23-00161-CV

————————————

**JOJO ARTHUR, Appellant**

**V.**

**BRAEBURN PLAZA INC. HOA, Appellee**

On Appeal from the 113th District Court
Harris County, Texas
Trial Court Case No. 2021-47686

## MEMORANDUM OPINION

In two issues, appellant JoJo Arthur challenges the trial court's final summary judgment for appellee Braeburn Plaza Inc. HOA (the Association) ordering the foreclosure of the Association's lien on Arthur's property for delinquent assessments and related charges, including reasonable attorney's fees and costs. Arthur also

challenges the trial court's interlocutory orders granting summary judgment for the Association on his claims to quiet title, and for negligence, breach of contract, and violation of the Texas Deceptive Trade Practices Act. We affirm.

Background

JoJo Arthur is the current owner of a lot and townhouse at 9527 Braeburn Glen Boulevard in Houston, Texas (the Property). The Property, as a part of the Braeburn Plaza Townhouse Subdivision, is governed by a "Declaration of Covenants, Conditions, and Restrictions." The Declaration was initially executed on July 27, 1970 and recorded in the real property records of Harris County, Texas. The Declaration has been amended four times, and each amendment was recorded in the county's real property records. The most recent amendment of the Declaration was recorded in the county's real property records on November 28, 1995.

As an owner in the Subdivision, Arthur is a member of the Association, which owns and oversees the Subdivision's common areas and manages the Subdivision's business affairs. To achieve its purpose, the Declaration authorizes the Association to impose and collect annual and special assessments from owners, obligating the owner of the property at the time the assessment fell due to pay the assessment, and creating a continuing lien on the property to secure the obligation:

COVENANT FOR MAINTENANCE ASSESSMENTS

Section 1. Creation of the Lien and Personal Obligation of Assessments. The Declarant, for each Lot owned within the Properties,

2

hereby covenants, and each Owner of any Lot by acceptance of a deed therefor, whether or not it shall be so expressed in such deed, is deemed to covenant and agree to pay to the Association: (1) annual assessments or charges, and (2) special assessments for capital improvements, such assessments to be established and collected as hereinafter provided. *The annual and special assessments, together with interest, costs, and reasonable attorney's fees, shall be a charge on the land and shall be a continuing lien upon the property against which each such assessment is made. Each such assessment, together with interest, costs, and reasonable attorneys' fee, shall be also the personal obligation of the person who was the Owner of such property at the time when the assessment fell due.* The personal obligation for the delinquent assessments shall not pass to his successor in title unless expressly assumed by them.

(emphasis added).

The Declaration outlines the deadline for paying annual assessments and indicates when they become delinquent:

> Section 8. <u>Effect of Nonpayment of Assessments</u>: <u>Remedies of the Association.</u> Annual assessments are due, in advance, on or before the first day of January in each year. Such assessment may be paid through two (2) payments, each being one-half (1/2) of the total annual assessment with the first of such payments being due on or before January 1, and the second payment being due on or before July 1, of the respective year. In the event the first payment is not received before January 11 of any given year, then the semi-annual payment of assessments, as set forth hereinabove, shall not be an option, and the entire balance of the annual assessment shall be deemed due and owing in its entirety. Assessments are deemed to be paid when received by the Association's Treasurer. Assessments not paid on or before the respective due date are deemed delinquent. A late fee shall be charged against all delinquent assessments. Said late fee shall be Twenty-Five and no/100 Dollars ($25.00) for each month and/or partial month that such assessment is delinquent. There shall be allowed a grace period of ten (10) days for receipt of payment in the month of January of each year, within which grace period no late charge shall be assessed. Stated differently, any assessment not paid, either in full or pursuant to the

3

aforementioned semi-annual payment schedule, on or before January 11 and July 1 of any given year shall be assessed a late charge ….

Additionally, the Association established a Delinquency Collection Policy, which was recorded in the county's real property records on February 21, 2012. The policy provides, in relevant part that:

Late Fees
     Assessments not paid on or before their respective due date (and payment is deemed made when received by the Association Treasurer) are deemed delinquent. A late fee of $25.00 will be assessed for each month that the assessment is delinquent [. . .] Late fees shall continue until all amounts owing have been paid in full or as otherwise provided by the Association policy.

\*      \*      \*

Transfer Fee
     On each transfer of title to a lot, the purchaser shall pay the Association a transfer fee in the amount of $25.00. Such fee is due at the time of transfer of title; no transfer of title will be accepted without receipt of payment in full.

The Declaration grants the Association authority to enforce payment of delinquent assessments by "bring[ing] an action at law against any Owner personally obligated to pay such assessment, or foreclose its lien against the property, whereby all late fees, costs and reasonable attorney's fees shall be added to the amount of such assessment, and the same shall constitute a part of said continuing lien." Concerning the Association's continuing lien on an owner's property for delinquent assessments and related charges, the Declaration provides:

4

Section 9. Subordination of the Lien to Mortgages. The lien of assessments provided for herein shall be subordinate to the lien of any first mortgage. *Sale or transfer of any Lot shall not affect the assessment lien*. However, the sale or transfer of any Lot pursuant to mortgage foreclosure or any proceeding in lieu hereof, shall not extinguish the lien of such assessments as to payments which became due prior to such sale or transfer nor shall such transfer relieve such Lot from liability for any assessments thereafter becoming due or from the lien thereof.

(emphasis added).

In February 2020, the Association sued previous owners of the Property—James and Mary Arthur—in the 113th Judicial District Court of Harris County in cause number 2020-07501. The Association sought expedited foreclosure of its continuing lien on the Property in order to recover delinquent annual assessments from 2018 and 2019, along with late fees, transfer fees, reasonable attorney's fees, and costs (the Expedited Foreclosure Lawsuit). *See* TEX. R. CIV. P. 736.1–736.13 (providing procedures for obtaining expedited order permitting foreclosure).

On March 3, 2020, the Property was sold under a writ of execution issued on an unrelated judgment and conveyed to Ali Gholam Gaspidi, who later conveyed the Property to Ngwolo & Company LLC. On February 9, 2021, Ngwolo & Company LLC sold the Property to JoJo Arthur pursuant to a general warranty deed. All these conveyances occurred while the Association's Expedited Foreclosure Lawsuit was pending. However, on August 4, 2020, months before Arthur purchased the Property, the Association recorded a Notice of Lis Pendens in the county's real

5

property records, notifying the public of its pending lawsuit for expedited foreclosure of the Property:

NOTICE OF LIS PENDENS

Please take notice that a suit is pending in the 113th Judicial District Court of Harris County, Texas, in which Braeburn Plaza, Inc. Is Petitioner and James Arthur and Adelaide Mary Arthur are Respondents. The suit is numbered and entitled as follows: Cause No. 2020-07501; In Re: Order for Foreclosure Concerning 9527 Braeburn Glen Blvd, Houston, Texas 77074, Petitioner: Braeburn Plaza, Inc. Respondent(s): James Arthur and Adelaide Mary Arthur, In the District Court for Harris County, Texas, 113th Judicial District.

The above suit is for the foreclosure of a homeowners association lien in favor of Braeburn Plaza, Inc. and affects real property in Harris County, Texas, which is commonly known as 9527 Braeburn Glen Blvd, Houston, Texas 77074 […]

Braeburn Plaza, Inc. seeks an expedited foreclosure of said lien.

After purchasing the Property, Arthur made an appearance in the Association's Expedited Foreclosure Lawsuit by filing a notice of change of ownership and appearance of counsel. In August 2021, just days after appearing in the Association's Expedited Foreclosure Lawsuit, Arthur filed the underlying lawsuit against the Association to quiet title and seeking declaratory relief under the Uniform Declaratory Judgments Act (UDJA). Arthur asked the trial court to "remove the cloud on his Property caused by [the Association's] actions, including its pending [Expedited Foreclosure Lawsuit]," and he requested a "declaratory judgment that he is not indebted to [the Association] for any accrued HOA

6

dues\charges, prior to the date of his purchase of the Property." In accordance with Texas Rule of Civil Procedure 736.11, the trial court dismissed the Association's Expedited Foreclosure Lawsuit after Arthur filed the underlying lawsuit.[1]

The rationale behind Arthur's claim to quiet title and his derivative claim for declaratory relief can be summarized in one paragraph from his petition: "[Arthur] acquired the Property with the understanding that there were\are no outstanding obligations, except for the Note, attached to the Property. Specifically, it was his understanding that prior owners of the Property had resolved or would resolve of their outstanding issues relating to HOA dues\matters with the HOA. [Arthur] was not informed and did not consent to the payment of any assessment or levies which accrued prior to the date of his purchase […] Arthur did not and has not expressly assumed any of the personal obligation(s) of his predecessors in title."

The Association filed an answer generally denying Arthur's allegations and asserting affirmative defenses. The Association also filed a counterclaim "seek[ing] non-monetary relief in the form of judicial foreclosure of its association lien on [the Property] to satisfy all amounts owing to [the Association]." In other words, the Association asserted its right under the Declaration to judicial foreclosure of its continuing lien on the Property to recover delinquent assessments, late fees, and

---

[1]    *See* TEX. R. CIV. P. 736.11(a), (c) (non-judicial foreclosure automatically stayed and subject to dismissal if debtor files independent suit putting at issue any matter related to lien sought to be foreclosed).

transfer fees, dating back to January 2018, before Arthur owned the Property. The Association also asserted its right under the Declaration to recover reasonable attorney's fees and costs, both in the trial court and on appeal.

In February 2022, the Association moved for partial summary judgment on Arthur's claim to quiet title and derivative claim for declaratory relief. The Association asserted that these claims fail because "(1) there are unpaid assessments owing on [the Property] and [the Association] has a lien on [the Property] by virtue of the Declaration for the unpaid amounts owing on [the Property], (2) what Arthur understood from, and was told by, third parties is irrelevant, and (3) Arthur's attorney knew before Arthur purchased [the Property] that there were unpaid amounts owing on [the Property] and Arthur himself had constructive knowledge of the unpaid amounts due to a lis pendens that was filed of record before Arthur purchased [the Property]."

The Association supported its motion with an affidavit dated February 17, 2022, from its treasurer, Micaela F. Rivera. This affidavit was accompanied by exhibits, including provisions from the Declaration regarding annual assessments and a running ledger detailing all charges and credits to the Property since January 2018. The Association also supported its motion with affidavits dated February 8, 2022, from its attorney, Gregory P. Crinion, and his legal assistants, Julia Klebo and Luann Erickson. These affidavits were supported by numerous exhibits. Arthur

objected to these affidavits as incompetent evidence for summary judgment, asserting they were "based on assumptions, hearsay, and speculations about what [he] knew or what they assume his present attorney knew." The trial court signed an interlocutory order granting summary judgment for the Association on Arthur's claims to quiet title and for declaratory relief without making an express ruling on Arthur's evidentiary objections.

In April 2022, Arthur filed his first amended petition, asserting claims against the Association for negligence and violation of the Texas Deceptive Trade Practices Act (DTPA). He claimed that the Association was negligent by failing to inform him of the delinquent assessments before he purchased the Property, failing to ensure the delinquent assessments were included in the purchase price, and failing to prevent the sale of the Property until the issues with the delinquent assessments were resolved. Arthur claimed that the Association violated the DTPA by failing to disclose the delinquent assessments before he purchased the Property.

The Association moved for partial summary judgment on Arthur's claims for negligence and DTPA violation. The Association asserted that Arthur's negligence claim fails because Arthur had knowledge of the delinquent assessments before purchasing the Property and because the Association owed him no legal duty prior to his purchase. The Association asserted that Arthur's claim under the DTPA fails because Arthur "did not purchase [the Property] from [the Association], [the

Association] was not involved in Arthur's purchase of [the Property], [the Association] was not aware of Arthur or Arthur's proposed purchase of [the Property], and [the Association] was not the owner of [the Property] when it was purchased by Arthur."

The Association's motion included an affidavit dated May 23, 2022, from the Association's attorney, Crinion, along with supporting exhibits. These exhibits included Arthur's general warranty deed to the Property and the notice of lis pendens that was filed in the county's real property records before Arthur purchased the Property. The motion also included an unsworn declaration dated May 22, 2022, from the Association's treasurer, Rivera. Her declaration was supported by the Declaration and its amendments.

Arthur objected to the affidavits attached to the Association's motion regarding Arthur's negligence and DTPA violation claims, asserting that "[n]one of the affiants have been subject to cross examinations" and "are based on assumptions, hearsay, and speculations." Arthur further asserted that the Association's motion was premature due to insufficient time for discovery. The trial court signed an interlocutory order granting summary judgment for the Association on Arthur's claims for negligence and DTPA violation without making an express ruling on Arthur's evidentiary objections.

In July 2022, the Association moved for final summary judgment on its counterclaim for judicial foreclosure. According to the Association, its summary judgment evidence established as a matter of law "the amounts owing to [the Association] on the Property, that [the Association] has a lien on the Property securing payment of such amounts, and that it is entitled to judicial foreclosure of its lien and an Order to sell the Property to satisfy those amounts." This motion included an unsworn declaration dated July 19, 2022, from the Association's treasurer, Rivera, supported by exhibits. These exhibits included the Declarations, its amendments, and an updated running ledger detailing all charges and credits to the Property since January 2018.

The Association claimed that "[a]s of July 10, 2022, and after applying all payments on the Property received by [the Association] from all sources and allowing any and all credits and offsets to which Arthur or the Property may be due, there is currently due and owing to [the Association] the amount of $4,725.00 for unpaid annual assessments, late fees and transfer fees on the Property." The Association asserted that "Late fees will continue to accrue at the rate of $25 per month beginning August 1, 2022 and continuing thereafter until all amounts due and owing to [the Association] on the Property are paid in full."

The Association's motion also included an affidavit dated July 10, 2022, from its attorney, Crinion, along with supporting exhibits. These exhibits included a

"Notice of Change of Ownership and Appearance of Counsel" which Arthur's attorney filed in the Association's Expedited Foreclosure Lawsuit that was dismissed. The exhibits also included itemized billing invoices from Crinion's law firm, detailing the legal services provided to the Association concerning delinquent assessments and related charges to the Property, dating back to July 2018, before and after Arthur owned the Property.

The Association asserted that "[t]he sum of $25,090.00 is a reasonable and necessary attorneys' fee to date in connection with the matters that are the subject of this lawsuit." It asserted that it had incurred court costs and other expenses to date totaling $1,594.75. Additionally, the Association asserted that it would "likely incur additional attorneys' fees in the amount of $3,500.00 in the event a bill of review or motion for new trial is filed, plus additional attorneys' fees in the amount of $7,500.00 if an appeal of this Judgment or any other judgment in this matter or any judgment entered upon any bill of review or motion for new trial is taken to the Court of Appeals, plus additional attorney's fees in the amount of $7,500.00 in the event an application for writ of error on this judgment or any other judgment in this matter or any judgment entered upon bill of review or motion for new trial is filed with the Texas Supreme Court, plus additional attorney's fees of $7,500.00 if said application for writ of error is accepted."

Arthur objected to the relevancy of the affidavits at issue, asserting that "[a]ll or most of these affidavits predate [his] ownership of the property and have NOTHING to do with [him]." He also asserted that Rivera's unsworn declaration was inadmissible "because [the summary judgment rule] requires an Affidavit, which is usually sworn." Additionally, he asserted that the Association's motions for summary judgment were "premature and an attempt to circumvent discovery." Arthur asked the trial court to enter an order ruling on his objections, asserting that he had not waived his objections to the exhibits.

Arthur filed his second amended petition, asserting claims for breach of contract and negligence. Arthur claimed that he was "an intended third-party beneficiary under [the Declaration], upon his purchase of the property," and that the Association "breached and continues to breach [the Declaration] by not timely pursuing the remedies provided by [the Declaration] against his predecessors in interest with respect to title to the property." Arthur further claimed that the Association committed negligence by breaching its duty under the Declaration to collect the delinquent assessments from previous owners.

The Association moved for summary judgment on these claims, asserting "[i]t is both a traditional and no-evidence motion for summary judgment." The motion included the same exhibits as the others. As for the breach of contract claim, the Association asserted that "Arthur has not identified any valid contract with [the

13

Association] by which [the Association] was obligated to seek personal liability against each owner of the property for assessments made during their respective ownership periods and not seek judicial foreclosure." According to the Association, "the Declaration does not require [the Association] to attempt to seek personal liability of an owner of a property. Rather, the Declaration provides for both personal liability of an owner at the time the assessment is made and a lien to secure unpaid amounts owing[.]" Thus, the Association asserted that it "has the option to seek personal liability or foreclose its lien against the property" in recovering delinquent assessments on the property. It further asserted that Arthur's negligence claim fails for similar reasons.

In January 2023, the trial court signed an interlocutory order granting summary judgment for the Association on Arthur's claims for breach of contract and negligence. Later that month, the trial court signed a final judgment, granting the Association's final motion for summary judgment after finding that the Association was entitled to judgment as a matter of law on its counterclaim for judicial foreclosure of the Property, and noting that it had already granted summary judgment for the Association on each of Arthur's affirmative claims.

The trial court's final judgment provides, in relevant part:

> ADJUDGED AND DECREED that Defendant Braeburn Plaza, Inc. shall have and recover from the Property, *but not as a personal judgment against Plaintiff*, the sum of $4,725.00 for unpaid annual assessments, late fees and transfer fees on the Property through July 10,

14

2022, plus additional late fees of $25.00 per month beginning August 1, 2022 and continuing thereafter until all amounts owing to Defendant are satisfied in full, plus expenses - including court costs - incurred through July 10, 2022 in the amount of $1,594.75, plus court costs incurred after July 10, 2022, plus the sum of $25,090.00 in attorneys' fees in connection with the matters that are the subject of this lawsuit through the date hereof, plus additional reasonable attorneys' fees in the amount of $3,500.00 in the event a restricted appeal or motion for new trial thereon is filed, plus additional reasonable attorneys' fees in the amount of $7,500.00 if an appeal of this Judgment or any other judgment in this matter or any judgment entered upon any bill of review or motion for new trial is taken to the Court of Appeals . . .

(emphasis added).

The final judgment ordered the foreclosure of the Association's lien on the Property, and that the Property be seized and sold at a public auction, with proceeds from the sale to be applied to the amounts owed to the Association. The final judgment made the Association's recovery of appellate attorney's fees contingent upon the successful prosecution or defense of the final judgment in the appellate courts. The trial court did not make an express ruling on Arthur's evidentiary objections, but the final judgment stated that "[a]ll relief not expressly granted herein is denied." This appeal followed.

**Trial Court's Final Summary Judgment in Favor of the Association**

In two issues, Arthur challenges the trial court's final judgment ordering the foreclosure of the Association's continuing lien on the Property for delinquent assessments, late fees, transfer fees, reasonable attorney's fees, and costs. In his first issue, Arthur contends that "[t]he trial court erred by granting a series of summary

15

judgment motions which did not comply with applicable Texas procedural and substantive law." In his second issue, Arthur contends that "[t]he trial court erred by granting attorney fees and costs which were not segregated by ownership of property most of which accrued from January 2018—-more than 36 months before [he] became and [sic] owner of the property."

## A. Standard of Review

We review a trial court's summary judgment de novo. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017). "Where, as here, a trial court does not specify the grounds on which it granted the motion for summary judgment, we must affirm if any of the grounds asserted in the motion are meritorious." *Id*. Since the Association moved for both traditional and no-evidence summary judgment, we first review the trial court's ruling on no-evidence grounds. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the trial court properly granted summary judgment on no-evidence grounds, we need not analyze the Association's traditional grounds for summary judgment. *Id*.

After an adequate time for discovery, a party may move for summary judgment on no-evidence grounds by alleging that no evidence exists of one or more essential elements of the claim or defense on which the adverse party bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *see Draughon v. Johnson*, 631 S.W.3d 81, 88 (Tex. 2021). The burden then shifts to the nonmovant to produce

more than a scintilla of evidence raising a genuine issue of material fact on each challenged element. TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *King Ranch,* 118 S.W.3d at 751. If the nonmovant does not meet its burden, the trial court must grant the motion for summary judgment on no-evidence grounds. TEX. R. CIV. P. 166a(i).

To prevail on traditional grounds, the movant has the burden to establish that no genuine issues of material fact exist, and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). When a defendant moves for summary judgment on its counterclaim, it must conclusively prove all essential elements of its cause of action. *See Rhône–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). When a defendant moves for summary judgment on the plaintiff's claim, it must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of its affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *Fallon v. Univ. of Tex. MD Anderson Cancer Ctr.*, 586 S.W.3d 58, 63 (Tex. App.— Houston [1st Dist.] 2019, pet. denied). A matter is conclusively established if

17

reasonable people could not differ as to the conclusion to be drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). "If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment." *Lujan*, 555 S.W.3d at 84.

Evidence raises a genuine issue of material fact if reasonable jurors could differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam). To determine if the nonmovant has raised a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Lujan*, 555 S.W.3d at 84.

### B. The trial court did not abuse its discretion in considering certain summary judgment evidence over Arthur's objections.

To begin, we address Arthur's argument that the trial court relied on improper summary judgment evidence in granting the Association's motions for summary judgment. Although we review the trial court's decision to grant the Association's motions for summary judgment de novo, we review a trial court's decision to admit or exclude summary judgment evidence for an abuse of discretion. *Lujan*, 555 S.W.3d at 84–85; *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex.

18

2017). A trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000) (per curiam) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998)).

"The same evidentiary standards that apply in trials also control the admissibility of evidence in summary-judgment proceedings," and "the rules of error preservation also apply." *FieldTurf USA, Inc. v. Pleasant Grove Ind. Sch. Dist.*, 642 S.W.3d 829, 837 (Tex. 2022) (citations omitted). A party complaining on appeal about form defects of summary judgment evidence must have timely objected and secured a ruling on the objection from the trial court or objected to the trial court's refusal to rule. *See FieldTurf USA*, 642 S.W.3d at 837 (citations omitted); *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 164 (Tex. 2018); *see also* TEX. R. CIV. P. 33.1(a) (error preservation requirements), 166a(f) (providing that a form defect in summary judgment evidence is not "grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend"). For defects in form, absent both an objection and a ruling, the complained-of evidence remains part of the summary judgment record and should be considered by the appellate court when reviewing the trial court's judgment. *See FieldTurf USA*, 642 S.W.3d at 837; *Seim*, 551 S.W.3d at 164; *see also* TEX. R. APP. P. 33.1(a). In contrast, when an affidavit contains substantive defects, such as being conclusory or

irrelevant, those substantive defects can be complained of for the first time on appeal. *See Seim*, 551 S.W.3d at 166; *see also Green v. Indus. Specialty Contractors, Inc.*, 1 S.W.3d 126, 130 (Tex. App.—Houston [1st Dist.] 1999, no pet. (conclusory); *McMahan v. Greenwood*, 108 S.W.3d 467, 498 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (relevance).

The Association claims that Arthur did not obtain a ruling from the trial court regarding his evidentiary objections, and thus, failed to preserve those objections for appellate review. A ruling on an objection to summary judgment evidence may be implied if the implication is "clear." *See Seim*, 551 S.W.3d at 166. "The mere granting of a summary judgment motion 'does not suffice as an implicit ruling on objections' to summary judgment evidence." *Fortitude Energy, LLC v. Sooner Pipe LLC*, 564 S.W.3d 167, 178 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (quoting *Ennis, Inc. v. Dunbrooke Apparel Corp.*, 427 S.W.3d 527, 532 (Tex. App.—Dallas 2014, no pet.)). "For there to be an implicit ruling on objections to summary judgment evidence, there must be 'some indication that the trial court ruled on the objections in the record or in the summary judgment itself, other than the mere granting of the summary judgment.'" *Id*. at 178 (quoting *Ennis*, 427 S.W.3d at 532).

The record demonstrates that Arthur objected to alleged form defects in the affidavits supporting the Association's motions. He asserted that these affidavits are based on assumptions, hearsay, and speculations. *See UT Health Sci. Ctr.–Hous. v.*

*Carver*, No. 01-16-01010-CV, 2018 WL 1473897, at \*5 (Tex. App.—Houston [1st Dist.] Mar. 27, 2018, no pet.) (mem. op.) (stating that "objections to hearsay, lack of foundation, lack of personal knowledge, sham affidavit, statement of an interested witness that is not clear, positive direct, or free from contradiction, best evidence, self-serving statements, and unsubstantiated opinions" in an affidavit are objections to form). The record also demonstrates that Arthur repeatedly requested rulings on these objections but never obtained express rulings. Assuming the trial court refused to rule on Arthur's objections, the record does not indicate that Arthur objected to the trial court's refusal to rule.

To preserve error on his objections regarding defects in the form of these affidavits, Arthur had the obligation to not only request a ruling but also to object to the trial court's refusal to rule. *See* TEX. R. APP. P. 33.1(a)(2)(B) (requiring party to object to refusal to rule to preserve error with respect to trial court's refusal to rule on objection). In other words, to preserve error, Arthur needed to inform the trial court of its failure to rule and formally object its failure to rule. *See id.*; *Bibby v. Bibby*, 634 S.W.3d 401, 409–10 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (holding that party who did not object to trial court's failure to rule on evidentiary objections did not preserve error even though she made these objections in three motions and reiterated them during two hearings and asked for a ruling on them). Because the record does not indicate that Arthur objected to the trial court's failure

21

to rule on his objections regarding defects in form, Arthur has not preserved error regarding these alleged defects.

Nevertheless, even if Arthur had preserved error regarding these alleged defects in form, we would still find that the trial court did not abuse its discretion in considering the affidavits over Arthur's objection. Arthur claimed that the affidavits were defective in form because they were based on assumptions, hearsay, and speculation; however, Arthur failed to specify which parts of each affidavit suffered from which defects. *See* TEX. R. CIV. P. 166a(f) ("Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend."); *Brown v. Arenson*, 571 S.W.3d 324, 332 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("Objections to a summary-judgment affidavit must be specific and non-conclusory."). Thus, the trial court could have reasonably denied Arthur's objections to the form of the affidavits.

Arthur claimed that Rivera's unsworn declarations could not be considered because the summary judgment rule requires affidavits. By statute, however, "an unsworn declaration may be used in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by statute or required by a rule, order, or

requirement adopted as provided by law."[2] TEX. CIV. PRAC. & REM. CODE §
132.001(a). To be used in place of an affidavit, an unsworn declaration must be in
writing and subscribed as true under penalty of perjury. *Id*. at § 132.001(c). The
statute also requires a jurat that appears to be in "substantially" the same form as the
template jurat for an unsworn declaration to become operative. *Id*. § 132.001(d); *see*
*Gillis v. Harris County*, 554 S.W.3d 188, 193 (Tex. App.—Houston [14th Dist.]
2018, no pet.) (concluding that the "key to an unsworn declaration" is that it must
be signed under penalty of perjury). Rivera's unsworn declarations contain a jurat
that follows the template jurat in the statute. The jurat contains Rivera's name,
address, date of birth, and a statement verifying "under penalty of perjury that the
foregoing is true and correct." Thus, Rivera's unsworn declarations comply with the
statute and could be used in place of affidavits.

Additionally, Arthur objected to the relevancy of the affidavits, alleging a
substantive defect in them that is not subject to the rules of error preservation. *See*
*McMahan*, 108 S.W.3d at 498. Specifically, Arthur claimed that "[a]ll or most of
these affidavits predate [his] ownership of the property and have NOTHING to do

---

[2]     Under the statute, an unsworn declaration cannot meet the requirement of an
affidavit in limited circumstances, involving "a lien required to be filed with a
county clerk, an instrument concerning real or personal property required to be filed
with a county clerk, or an oath of office or an oath required to be taken before a
specified official other than a notary public." TEX. CIV. PRAC. & REM. CODE §
132.001(b). However, none of those exceptions apply to the circumstances here.

with [him]." However, all the affidavits and declarations supporting the Association's motions were executed after Arthur sued the Association. Moreover, Arthur is the current owner of the Property, and each affidavit and declaration addresses delinquent assessments and related charges to the Property in some way. Therefore, Arthur's allegation that the affidavits have nothing to do with him and the case are unfounded.

## C. The trial court properly granted summary judgment for the Association on Arthur's claims.

Next, we address Arthur's contention that the trial court erred in granting summary judgment for the Association on his claims to quiet title and for negligence, breach of contract, and  violation of the DTPA.

### 1. Quiet Title

A suit to quiet title is an equitable action to clarify ownership and remove any cloud on title to property. *See Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007); *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).  "The elements of the cause of action to quiet title are that the plaintiff must show (1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." *Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied). "The effect of a suit to quiet title is to

declare invalid or ineffective the defendant's claim to title." *Essex Crane*, 371 S.W.3d at 388.

The UDJA is a remedial statute designed "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, or other legal relations[.]" TEX. CIV. PRAC. & REM. CODE § 37.002(b). "'Parties may pursue a declaratory judgment action only 'if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought.'" *Loya Ins. Co. v. Avalos*, 610 S.W.3d 878, 883 (Tex. 2020) (quoting *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995)). The UDJA "does not enlarge a trial court's jurisdiction, and a litigant's request for declaratory relief does not alter a suit's underlying nature." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 370 (Tex. 2009) (citations omitted).

In his original petition, Arthur sued the Association to quiet title, requesting the trial court "remove the cloud on his Property caused by [the Association's] actions, including its pending lawsuit." Arthur also requested a declaration, under the UDJA, "that he is not indebted to [the Association] for any accrued HOA dues\charges, prior to the date of his purchase of the Property." When an action for declaratory relief and a suit to quiet title are based on the same facts and request similar relief, they are both treated as one suit to quiet title. *Sw. Guar. Tr. Co. v.*

*Hardy Rd. 13.4 Joint Venture*, 981 S.W.2d 951, 957 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).

"In Texas, a covenant runs with the land when it touches and concerns the land; relates to a thing in existence or specifically binds the parties and their assigns; is intended by the original parties to run with the land; and when the successor to the burden has notice." *Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987). When land is sold, the agreed-to covenants become a part of the consideration. *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 279–80 (Tex. 2018). Thus, "[w]e analyze restrictive covenants in a deed by applying the general rules of contract interpretation." *Country Cmty. Timberlake Vill., L.P. v. HMW Special Util. Dist.*, 438 S.W.3d 661, 669 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *see Tarr,* 556 S.W.3d at 280 (stating that courts have always treated unambiguous restrictive covenants as valid contracts between individuals). "If a restrictive covenant is unambiguous, a court may not subject it to further judicial interpretation." *Country Cmty. Timberlake Vill.*, 438 S.W.3d at 669.

Along with its motion, the Association presented the Declaration, as well as its amendments, which were filed in the county's real property records decades before Arthur purchased the Property. The Declaration specifies that all properties in the Subdivision "shall be held, sold, and conveyed subject to" the covenant to pay annual and special assessments "for the purpose of protecting the value and

26

desirability of, and which shall run with, the real property and be binding on all parties having any right, title or interest in the described properties." The Declaration provides that "[t]he annual and special assessments, together with interest, costs, and reasonable attorney's fees, shall be a charge on the land and shall be a continuing lien upon the property against which each such assessment is made." The Declaration also provides that "[t]he Association may bring an action at law against any Owner personally obligated to pay such assessment, or foreclose its lien against the property, whereby all late fees, costs and reasonable attorney's fees shall be added to the amount of such assessment, and the same shall constitute a part of said continuing lien."

The Association presented an affidavit dated February 17, 2022, from its treasurer, Rivera, along with a running ledger reflecting delinquent assessments and related charges to the Property dating back to January 2018. Rivera stated that, "[e]xcluding all transfer fees, legal fees and related expenses, such unpaid assessments and late fees (after application of all such payments received) total $4,500.00." The Declaration combined with Rivera's affidavit and the Association's running ledger for the Property established that the Association had a valid and enforceable continuing lien on the Property for delinquent assessments and related charges. *See McKeough v. Camelot Townhomes Ass'n, Inc.*, No. 08-21-00057-CV, 2023 WL 3984859, at *9-11 (Tex. App.—El Paso June 13, 2023, no pet.) (mem. op.)

27

(concluding trial court properly granted traditional summary judgment to condominium association on its judicial foreclosure claim when association presented condominium's declaration, property owner's warranty deed to property, and copy of its ledger of assessments, fees, and payments for the property, demonstrating delinquent assessments and late fees on the property, and property owner failed to present any controverting evidence challenging the contents of the ledger); *see also Mailloux v. KJ Env't Mgmt., Inc.*, No. 02-20-00059-CV, 2020 WL 6334176, at *4 (Tex. App.—Fort Worth Oct. 29, 2020, no pet.) (mem. op.) (holding language in affidavit that "the amount owed is $12,957.43[,]" and "all offsets and credits have been given and applied" to debt was sufficient to support summary judgment).

In response to the Association's motion, Arthur produced no controverting evidence challenging the contents of Rivera's affidavit and the Association's running ledger for the Property. Rather, Arthur challenges the trial court's interpretation of the Declaration, asserting he is not liable for the delinquent assessments and related charges that became due before he purchased the Property. For instance, Arthur argues he is not liable for the assessments because he is not in privity of contract with the previous owners of the Property whom the Association sued. However, Arthur's general warranty deed indicates that the Property was conveyed "subject to any and all valid and subsisting . . . maintenance charges,

28

together with any lien securing the maintenance charges . . ." The Declaration obligates each new owner to pay assessments until they are paid in full, and this obligation runs with the Property. While the Declaration does not provide for personal liability for assessments due before a new owner acquires a property, the Association did not seek personal liability against Arthur for the delinquent assessments and related charges, and the trial court's final judgment does not hold Arthur personally liable for them. Rather, the trial court ordered foreclosure of the Association's lien on the Property to allow the Association to recover the debts owed on the Property.

Arthur also argues he was not aware of the Association's lawsuit against the previous owners prior to purchasing the Property. However, "[a] filed lis pendens is constructive notice of the underlying lawsuit," making a subsequently acquired interest in the Property "subject to the outcome of the pending litigation." *World Sav. Bank, F.S.B. v. Gantt*, 246 S.W.3d 299, 303 (Tex. App.—Houston [14th Dist.] 2008, no pet.). The Association filed a notice of lis pendens in the county's real property records about six months before Arthur purchased the Property. The notice identified the Property and stated that there was a lawsuit pending against the previous owners to foreclose the Association's lien on the Property. In sum, Arthur presented no evidence raising a genuine issue of material fact regarding the validity and enforceability of the Association's lien on the Property for delinquent

assessments and related charges. *See e.g.*, *Cardenas v. Bilfinger TEPSCO, Inc.*, 527 S.W.3d 391, 401 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (stating allegations made in a nonmovant's pleadings "generally do not constitute competent summary-judgment evidence"); *Laidlaw Waste Sys. (Dall.), Inc. v. City of Wilmer,* 904 S.W.2d 656, 660 (Tex. 1995) (party's pleadings are not substitute for competent evidence, even if pleadings are sworn or verified). Thus, summary judgment for the Association on Arthur's claim to quiet title and his derivative claim for declaratory judgment was proper.

## 2. Breach of Contract

We now turn to the trial court's decision to grant summary judgment for the Association on Arthur's breach of contract claim. A plaintiff claiming breach of contract must prove: (1) the existence of a valid contract, (2) performance or tendered performance, (3) the defendant's breach, and (4) damages as a result of the breach. *Bank of Tex. v. VR Elec., Inc.*, 276 S.W.3d 671, 677 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). "A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform." *Case Corp. v. Hi–Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 769–70 (Tex. App.—Dallas 2005, pet. denied).

Arthur claimed the Association "breached and continues to breach [the Declaration] by not timely pursuing the remedies provided by [the Declaration] against his predecessors in interest with respect to title to the property." Arthur failed to identify any provision in the Declaration *requiring* the Association to pursue legal action against an owner personally liable for the delinquent assessments and related charges before pursuing judicial foreclosure. Although the Declaration *permits* the Association to take legal action against an owner, it does not mandate that the Association do so: "The Association *may* bring an action at law against any Owner personally obligated to pay such assessment, or foreclose its lien against the property . . . " (emphasis added). Because Arthur failed to present evidence that the Association breached the Declaration by exercising its right to foreclose its continuing lien on the Property in lieu of pursuing legal action against a previous owner who was personally liable for delinquent assessments and related charges to the Property, summary judgment for the Association on Arthur's claim for breach of contract was proper.

### 3. Negligence

Moving on to Arthur's negligence claims, in Texas, a cause of action for negligence requires three elements: (1) there must be a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately caused by the breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). "A duty is 'a

31

legally enforceable obligation to conform to a particular standard of conduct'" and can be assumed by contract or imposed by law. *Helbing v. Hunt*, 402 S.W.3d 699, 702 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *see*, *e.g.*, *Elliott–Williams Co. v. Diaz*, 9 S.W.3d 801, 803–04 (Tex. 1999). "Whether a duty exists is a threshold inquiry and a question of law; liability cannot be imposed if no duty exists." *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006).

Arthur claimed the Association was negligent in failing to collect the delinquent assessments from previous owners. Arthur presented no evidence that the Association owed him a duty to collect delinquent assessments and related charges to the Property from previous owners. Although Arthur alleged that "Defendant had\has a duty under [the Declaration] to bring an action or pursue the collection of the assessments at the relevant time against the Lot Owners at that time," Arthur failed to identify a provision in the Declaration *requiring* the Association pursue legal action against an owner personally liable for the delinquent assessments and related charges before pursuing judicial foreclosure.

Arthur further claims that the Association was negligent by failing to inform him of the delinquent assessments before he purchased the Property, failing to ensure the delinquent assessments were included in the purchase price, and failing to prevent the sale of the Property until the issues with the delinquent assessments were resolved. The Association asserted in its motion for partial summary judgment that

it had no duty to Arthur before he purchased the Property. Rivera stated in her unsworn declaration that, "[the Association] had no involvement in connection with the purchase by Arthur from Ngwolo & Company LLC and was not aware of either Arthur or Arthur's purchase or proposed purchase until after it had occurred. There was no relationship between Arthur and [the Association] before Arthur's purchase of the Lot."

Arthur alleged that it was "his understanding that prior owners of the Property had resolved or would resolve of their outstanding issues relating to HOA dues\matters with the HOA." Rivera's unsworn declaration further explained that none of Arthur's predecessors in title from at least January 1, 2018, had any authority to act on the Association's behalf regarding the Property. We conclude that the summary judgment evidence conclusively established that the Association did not owe Arthur the duties alleged in his petition, and that summary judgment was proper on Arthur's negligence claims.

### 4. DTPA Violation

Arthur claimed that the Association violated the DTPA by failing to disclose the delinquent assessments before his purchase. To prevail on his DTPA claim, Arthur had to prove, among other things, that the Association "fail[ed] to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the

33

consumer into a transaction into which the consumer would not have entered had the information been disclosed." TEX. BUS. & COM. CODE § 17.46(b)(24); *see id*. § 17.50(a) (providing the requirements for maintaining a DTPA action).

"Nondisclosure without evidence that a defendant had knowledge of the undisclosed information and intentionally withheld the information is insufficient to establish a violation of the DTPA." *Willowbrook Foods, Inc. v. Grinnell Corp.*, 147 S.W.3d 492, 507 (Tex. App.—San Antonio 2004, pet. denied). The Association presented evidence that it did not intentionally withhold information from Arthur to induce him into purchasing the Property. Again, Rivera stated in her unsworn declaration that the Association was not involved in Arthur's purchase of the Property. She stated that the Association was not aware of Arthur or the purchase until after it occurred, and that there was no relationship between the Association and Arthur until after the purchase was completed. Arthur adduced no evidence raising a genuine issue of material fact regarding whether the Association induced him to purchase the Property by intentionally withholding information. Thus, summary judgment was proper on Arthur's DTPA claim.

### D. The trial court properly granted summary judgment for the Association on its counterclaim for judicial foreclosure.

We now turn to Arthur's contention that the trial court erred in granting summary judgment for the Association on its counterclaim for judicial foreclosure. To prevail on its claim for judicial foreclosure, the Association had to prove as a

matter of law: (1) the existence of a lien against the Property securing payment of the assessments and related charges, including attorney's fees and costs; (2) an outstanding debt for delinquent assessments and related charges secured by the lien, and (3) the Association's entitlement to foreclosure on the lien against the Property to satisfy the debt. *Achobe v. N. Mission Glen Est. Homeowner Ass'n, Inc.*, No. 01-17-00787-CV, 2018 WL 4701737, at *2 (Tex. App.—Houston [1st Dist.] Oct. 2, 2018, no pet.) (mem. op.); *Sloan v. Owners Ass'n of Westfield, Inc.*, 167 S.W.3d 401, 404 (Tex. App.—San Antonio 2005, no pet.) (mem. op.).

First, the Declaration provides that "[t]he annual and special assessments, together with interest, costs, and reasonable attorney's fees, shall be a charge on the land and shall be a continuing lien upon the property against which each such assessment is made." Moreover, the Declaration provides that "[s]ale or transfer of any Lot shall not affect the assessment lien." Thus, the Association holds a valid and enforceable lien against the Property for delinquent assessments, costs, and reasonable attorney's fees.

Second, when the Association moved for summary judgment on its counterclaim, the Association presented a running ledger prepared by Rivera that indicated the sum of $4,725.00 for unpaid annual assessments, late fees, and transfer fees was still owed on the Property. The Association further presented an affidavit from its attorney, Crinion, stating that the Association "has incurred and been

charged, or will be charged, $23,590.00 for legal services provided in connection with this matter and $1,594.75 for expenses, including court costs, incurred in connection with this matter." Crinion supported his affidavit with itemized billing invoices from his law firm, detailing the legal services provided to the Association regarding the delinquent assessments and related charged owed on the Property, beginning in August 2018. Thus, the record demonstrates an outstanding debt exists for delinquent assessments and related charges that is secured by the debt.

Third, the Declaration provides that "[t]he Association may bring an action at law against any Owner personally obligated to pay such assessment, or foreclose its lien against the property, whereby all late fees, costs and reasonable attorney's fees shall be added to the amount of such assessment, and the same shall constitute a part of said continuing lien." Thus, under the Declaration, the Association had the right to bring its counterclaim for judicial foreclosure of its lien on the Property to satisfy the delinquent assessments and related charges, including late fees, transfer fees, reasonable attorney's fees, and costs.

Arthur contends that the trial court erred in rendering a judgment against the Property that included the Association's reasonable attorney's fees and costs before he purchased the Property. However, Arthur cites no cases to support his contention. Texas law allows the recovery of attorney's fees when authorized by statute or contract. *Gulf States Utilities Co. v. Low*, 79 S.W.3d 561, 567 (Tex. 2002); *see Tarr,*

556 S.W.3d at 280 (stating that courts have always treated unambiguous restrictive covenants as valid contracts between individuals). Here, the Declaration provides that "[t]he annual and special assessments, together with interest, *costs, and reasonable attorney's fees, shall be a charge on the land and shall be a continuing lien upon the property against which each such assessment is made*." (emphasis added). Thus, reasonable attorney's fees and costs that the Association previously incurred to collect the delinquent assessments and related charges against the Property are a part of the outstanding debt owed to the Association, which is secured by the continuing lien on the Property. Because the Association chose to foreclose the lien on the Property rather than seek to hold Arthur personally liable for the delinquent assessments and related charges that accrued during his ownership, the Association was not required to segregate its reasonable attorney's fees and costs between those before and after Arthur purchased the Property. *See* TEX. CIV. PRAC. & REM. CODE § 38.001 ("A person may recover reasonable attorney's fees ... in addition to the amount of a valid claim and costs, if the claim is for: ... (8) an oral or written contract."); *see also Endeavor Energy Res., L.P. v. Discovery Operating, Inc.*, 554 S.W.3d 586, 595 (Tex. 2018) (stating that contracting parties are generally free to choose their own terms and courts should "respect and enforce" those terms given Texas's "strong public policy favoring freedom of contract"); *Inwood N. Homeowners' Ass'n*, 736 S.W.2d at 634 ("Creation of a contractual lien depends

only on evidence apparent from the language of the agreement that the parties intended to create a lien.").

Because the Association established the existence of a lien, an outstanding debt charged to the Property secured by the lien, and its entitlement to judgment on the debt and foreclosure of the lien, the trial court's summary judgment for the Association on its judicial foreclosure counterclaim was proper.

## Conclusion

We overrule Arthur's two issues on appeal and affirm the trial court's judgment.

Amparo "Amy" Guerra
Justice

Panel consists of Justices Guerra, Caughey, and Morgan.